337 So.2d 1177 (1976)
STATE of Louisiana
v.
Oliver MARKS and Herbert Jones, Jr.
No. 57964.
Supreme Court of Louisiana.
October 6, 1976.
*1179 Kendall R. Moses, Jack E. Hoffstadt, Student Practitioners, Arthur A. Lemann, III, Supervising Atty., New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, District Attorney, Louise S. Korns, Vincent C. Cuccia, Asst. Dist. Attys., for plaintiff-appellee.
MARCUS, Justice.
Oliver Marks and Herbert Jones, Jr. were indicted by the grand jury for the Parish of Orleans for possession with intent to distribute a controlled dangerous substance, to-wit: heroin, in violation of La. R.S. 40:966. After trial by jury, Oliver Marks was found guilty as charged and was sentenced to life imprisonment at hard labor. Herbert Jones, Jr. was found guilty of possession of heroin and sentenced to serve ten years at hard labor without benefit of *1180 parole, probation or suspension of sentence.[1] On appeal, defendants rely on eight assignments of error for reversal of their convictions and sentences.[2]

ASSIGNMENTS OF ERROR NOS. 1, 3 AND 8
Prior to trial, defendants moved to suppress certain physical evidence on the ground that it was obtained as a result of an unconstitutional search and seizure (Assignment of Error No. 1). Defendants also objected to the admission of the evidence at trial (Assignment of Error No. 3) and moved for a mistrial at the conclusion of the trial on the ground that the evidence was obtained in an unconstitutional search (Assignment of Error No. 8). The trial judge denied defendants' motions and overruled their objection to the introduction of the evidence at trial. Defendants aver that the trial judge's rulings on each of these occasions were in error. Since the merit of each assignment of error depends on the constitutionality of the search, we will treat them together for ease of disposition.
At the hearing on the defendants' motions to suppress evidence, Officer Louis Dabdoub testified as follows:
At approximately 6:30 P.M. on that date (August 29, 1975) myself, Officer Haab was my partner, and Assistant Chief of Harbor Police Joseph Canatella met with a reliable confidential informer who has given us information in the past which has led to arrests and convictions. This informer told us that a Negro male whose name he did not know, who was big, heavy, and wearing flashy clothes and whom he thought had a gun was on the corner of Baronne and Clio. He stated this unknown Negro male was driving a red 1965 Pontiac, License No. 74L842, and the vehicle was parked on Clio just off Baronne Street. He stated the Negro male was waiting for another unknown Negro male driving a gold Pontiac to bring him two or three bundles of heroin.. . .
The record further discloses that after receiving the "tip," Officer Dabdoub radioed the information to other narcotics units in the area. Two units responded to the alert and assisted Officer Dabdoub in setting up a surveillance in the area of Clio and Baronne. One unit, manned by Officer Branham was stationed on Carondelet Street. Another vehicle, occupied by Officers Schultz and Martin set up surveillance on Clio Street in a position enabling them to observe the corner of Clio and Baronne. Officer Dabdoub's vehicle was stationed at the intersection of Clio and St. Charles. During the course of setting up the surveillance, the officers corroborated the informant's tip as to the location and license number of the red Pontiac. They also observed a big, heavy set Negro male (Marks) wearing flashy clothes who fit the description given to Officer Dabdoub by the informant. At about 8:40 p.m., Officer Schultz saw a gold Pontiac pull up to the intersection of Clio and Baronne. An occupant of the gold car got out and spoke to a group of people standing on the corner where the defendant Marks had been observed. As soon as the occupant of the gold Pontiac reentered the car, the defendants Marks and Jones were seen getting into the red Pontiac. With Jones as driver, they followed the gold car to Carondelet and turned left out of Officer Schultz's sight. Meanwhile, Officer Branham, who was stationed on Carondelet, saw the two vehicles and *1181 notified the other officers that they appeared to be together. He testified that he saw at least two heads in the red car as he followed the gold and red Pontiacs down Carondelet Street in his unmarked police unit. In the 1000 block, the gold car pulled over and parked alongside the curb. The red car pulled over and parked directly in front of it. Officer Branham watched as a heavy set Negro man (Marks) exited the red car and approached and met with the occupant of the gold car, who had already gotten out and was standing on the sidewalk. Officer Branham observed an exchange taking place between Marks and the driver of the gold Pontiac as he slowly drove abreast of the surveilled vehicles. He then pulled over to block a possible escape by the red car and at the same time advised the other officers by radio that he thought the drug transaction had taken place. The two other police units waiting in close proximity arrived on the scene within seconds. All of the police officers got out of their vehicles and surrounded defendants' car. Officer Dabdoub, with identification in his hand, called out: "Police. Get out and put your hands where I can see them." Officers Dabdoub and Branham, realizing that the gold car had escaped in the confusion, immediately drove away in search of it. Officers Schultz and Martin ordered the defendants out of the car, had them assume a "spread eagle" position against the rear of the vehicle and proceeded to frisk them for weapons. During the course of the pat-down of the defendant Marks, Officer Schultz felt a bulge within the sock of the defendant along his left calf. The officer testified that it felt like a piece of tin foil. He then informed Marks that he was under arrest for a narcotics violation and began advising him of his Miranda rights as he retrieved the tin foil package. Upon opening the package, three smaller packages, each containing twenty-five packets of heroin, were found. He also placed Jones under arrest and advised him of his rights.
It is well settled under the fourth amendment that a search conducted without a warrant issued upon probable cause is per se unreasonablesubject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of these exceptions is a search incident to a lawful arrest made of the person and the area in his immediate control. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Such a search is justified in order to discover weapons that may threaten the safety of the arresting officer and to prevent the concealment and destruction of evidence. It has recently been confirmed that an arrest made in a public place without a warrant is valid if founded on probable cause, regardless of the presence or absence of exigent circumstances. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). But in order to justify a search as incident to an arrest, an arrest must have already occurred and the arrest itself must have been lawful.
In order to resolve the issue in this case, therefore, we must determine when the defendants were actually arrested and whether the arrest was based upon probable cause to believe that they had committed a crime.
Article 201 of the Louisiana Code of Criminal Procedure defines "arrest" as follows:
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
The statutory definition of "arrest" is keyed to the concept of restraint. In this case, the defendants' car was initially surrounded by three police vehicles, one of which pulled in front of the red Pontiac expressly to prevent its departure. The officers got out of their vehicles and closed in on defendants' vehicle. They identified themselves as policemen and removed the defendants from their car, placing them "spread eagle" against the rear of the vehicle. At that point, the freedom of the *1182 defendants was unmistakably restrained; they were under arrest. It is the circumstances indicating an intent to effect an extended restraint on the liberty of an accused, rather than the precise timing of an officer's statement: "You are under arrest," that are determinative of when an arrest is actually made. State v. Warren, 283 So.2d 740 (La.1973). This principle was recognized in Peters v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) wherein the Court noted that regardless of when Peters was "arrested" it was clear that an arrest, for purposes of constitutional justification, had taken place before the search commenced, when the subject was grabbed by the collar and his freedom of movement curtailed on the basis of probable cause to believe that he was engaged in criminal activity. Accordingly, under the circumstances in this case we find that the defendants were lawfully arrested when they were removed from their car and before the immediate weapons frisk was begun. The fact that the defendants were not verbally advised that they were under arrest until seconds later during the course of the pat-down alters nothing.
Article 213 of the Louisiana Code of Criminal Procedure provides in pertinent part:
A peace officer may, without a warrant, arrest a person when:
. . . . . .
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer;....
Reasonable cause, which we have treated as consonant with the probable cause concept, exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Wood, 262 La. 259, 263 So.2d 28 (1972). Reasonable or probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Sarrazin, 291 So.2d 393 (La.1974). Compliance with these standards is in the first instance a substantive determination to be made by the trial judge from the facts and circumstances of the case. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Warren, 283 So.2d 740 (La.1973).
In the case at bar, the police had received information from a reliable informant who, on prior occasions, had given information leading to arrests and convictions. Moreover, the informant's tip was highly detailed in its description of the build and clothing of the defendant Marks, his automobile's license number and location, and the other car that would be involved in the drug transaction. Thus, although the informant did not specifically state the source of his information, the report was of a sort which in common experience may be recognized as having been obtained in a reliable way. See Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). When the defendants were stopped, virtually every bit of the information given by the confidential informant had been verified. Coupled with Officer Branham's independent observation of an exchange between defendant Marks and the driver of the gold Pontiac, we are convinced that ample probable cause existed prior to the arrest of defendants. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Accordingly, since the arrest was constitutionally valid, the evidence seized during the course of the search incident thereto was properly admissible at trial. The trial judge did not err in overruling defendants' motions to suppress the evidence, their objection to its introduction at trial, and their motion for a mistrial.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 2
Defendants contend that the trial judge erred in not requiring the state to furnish *1183 the names and addresses of the witnesses it intended to use in the prosecution of the case, which information was requested by defendants in their motion for a bill of particulars.
The function of a bill of particulars is to inform the defendant more specifically of the nature of the charge against him. It cannot be used as a device to secure the details of the state's evidence or collateral information. La.Code Crim.P. art. 484; State v. Vince, 305 So.2d 916 (La.1974). It is well settled in the jurisprudence that the state is not required to furnish the defendant with a list of its witnesses. State v. Breston, 304 So.2d 313 (La. 1974); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967).
In brief, defendants argue for the first time that they needed a list of state witnesses to determine the identity of the confidential informant who tipped off the police to the ensuing drug transaction. Even had the state complied with defendants' request for a witness list, no information about the confidential informant would have been obtained; the informant was not among the state witnesses appearing at trial. Moreover, the trial judge noted that a full list of state witnesses had already been filed in the proceedings.
Furthermore, the court will order the disclosure of the name of the confidential informant only under exceptional circumstances for the prevention of an injustice. The burden is upon the defendant to show exceptional circumstances justifying disclosure. State v. Rhodes, 308 So.2d 770 (La.1975); State v. Howard, 283 So.2d 197 (La.1973); State v. Dotson, 260 La. 471, 256 So.2d 594 (1971). The transcript of the hearing on the sufficiency of the state's answer to defendants' motion for a bill of particulars reveals no attempt by the defendants to demonstrate to the trial judge the importance of the informant's identity to their defense. Hence, we have no showing of exceptional circumstances here.
In sum, we find no error in the trial judge's ruling that the state was not required to furnish the requested information. This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 4, 5 AND 6
Defendants contend that the trial judge erred in failing to sustain their objections to the testimony of Officer Frank Ben on three occasions as being irrelevant.
Defendants first objected on the ground of relevancy when Officer Ben was asked to testify for the state concerning the packaging, preparation and distribution of heroin. La.R.S. 15:441 provides:
Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.
In the instant case, defendants were being prosecuted for possession of heroin with the intent to distribute. We have recently held that the amount and form of a controlled dangerous substance found in the possession of an accused constitutes evidence from which a jury can properly infer an intent to distribute that substance. State v. Willis, 325 So.2d 230 (La.1975); State v. House, 325 So.2d 222 (La.1975); State v. Sibley, 310 So.2d 100 (La.1975). Therefore, testimony demonstrating the form and quantity of heroin usually associated with wholesale and street level distribution of that substance was highly relevant to support an inference that the heroin seized from the defendant Marks was intended for distribution rather than for personal use. Accordingly, the trial judge did not err in overruling the objection of the defendants to this testimony.
The second occasion on which the defendants objected to Officer Ben's testimony occurred when the prosecutor questioned the officer on the formation of scar tissue in veins. The record reveals that no prejudice to the defendants resulted from this question since the district attorney *1184 abandoned this line of questioning after defendants objected that the officer was not a dermatologist and therefore was unqualified to testify as to the formation of scar tissue.
Defendants' next objection was to the ruling of the court that Officer Ben was qualified to testify as an expert on narcotics paraphernalia and track marks. The ground urged before the trial judge was that the officer had no scholastic or medical training in this field. La.R.S. 15:466 sets out the guidelines for the qualification of expert witnesses.
The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court.
We have consistently held that the competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge. His rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error. State v. Vassel, 285 So.2d 221 (La. 1973). The record discloses that Officer Ben had observed thousands of track marks during the course of his work as a police narcotics agent. Moreover, he had on numerous occasions been qualified as an expert in the filed of track mark identification in Louisiana state and federal courts. We cannot, therefore, find that the trial judge abused his discretion in overruling defendants' objection to Officer Ben's qualifications as an expert.
Defendants urge for the first time on appeal that the testimony concerning track marks was irrelevant and prejudicial. Article 841 of the Code of Criminal Procedure provides that an irregularity or error cannot be availed of after verdict unless the defendant has made known to the court his objection and the grounds therefor. A new basis for an objection cannot be raised for the first time on appeal. State v. Powell, 325 So.2d 791 (La. 1976); State v. Forbes, 310 So.2d 569 (La. 1975); State v. McCormick, 272 So.2d 692 (La.1973); State v. Evans, 249 La. 861, 192 So.2d 103 (1966). Had the defendants in this case urged the ground of relevancy during Officer Ben's testimony, the trial judge would have had the opportunity to consider the nature of the objection. Additionally, the state would have had an opportunity to demonstrate the relevancy of the testimony or introduce further evidence to lay a more adequate foundation had the trial judge deemed it necessary. Since the defendants did not raise the ground of relevancy at trial, that issue is not properly before us for review.
Assignments of Error Nos. 4, 5 and 6 are without merit.

ASSIGNMENT OF ERROR NO. 9
Defendants contend that the trial judge erred in overruling their motions for a directed verdict of acquittal.[3] Both defendants claim that the state failed to produce any evidence of an essential element of the offenses for which they were convicted.
*1185 There is no merit to their contention. This court can find error in the trial judge's denial of a motion for a directed verdict and reverse the conviction only where there is no evidence of the crime or an essential element thereof. State v. Douglas, 278 So.2d 485 (La.1973). Defendant Marks avers no evidence was adduced as to intent to distribute heroin. He argues that the mere possession of a controlled dangerous substance does not constitute "some evidence" of an intent to distribute. While he is correct is his argument to this extent, we have held that proof of possession of a large quantity of a controlled dangerous substance is evidence from which an intent to distribute can be inferred. State v. Willis, 325 So.2d 230 (La.1975); State v. House, 325 So.2d 222 (La.1975); State v. Sibley, 310 So.2d 100 (La.1975). Additionally, evidence of the form of the substance possessed, as well as expert testimony relative to its use and usual methods of distribution, are factors to be considered in inferring intent to distribute. State v. House, supra. In the instant case, the quantity and form (three bundles or seventy-five papers) of heroin possessed by Marks, together with Officer Ben's testimony concerning the normal wholesale and street level operation in the distribution of heroin, certainly constituted "some evidence" from which the jury could have inferred that defendant Marks' possession was with the intent to distribute.
Defendant Jones contends that the state presented no evidence of his constructive possession of the heroin seized from Marks. This court held in State v. Smith, 257 La. 1109, 245 So.2d 327 (1971), that one need not actually possess the controlled dangerous substance to violate the prohibition thereof; constructive possession is sufficient. We further stated in Smith that a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion if he willfully and knowingly shares with the other the right to control of it. Guilty knowledge is an essential ingredient of the crime of possession of a controlled dangerous substance. State v. Porter, 296 So.2d 302 (La.1974). Whether the accused knew the substance was a narcotic drug is a matter of proof by direct or circumstantial evidence. However, the question of sufficiency of the evidence is a matter, not for this court, but for a jury. It is only where there is no evidence at all of an essential element of the crime charged that this court may legally set aside the conviction on appeal. State v. Knight, 298 So.2d 726 (La.1976).
The record discloses that there was some evidence that the defendant Jones had knowledge of the heroin bundles seized from Marks and that he shared the right to control them. Jones was in the area of the corner of Clio and Baronne when the gold Pontiac pulled up and an occupant spoke to Marks. Jones immediately accompanied Marks to the red Pontiac. Jones, the driver, followed the gold Pontiac to the 1000 block of Carondelet where he pulled over and waited as Marks and an unidentified man from the gold Pontiac met on the sidewalk. He was in a position to observe any transaction that occurred. After Marks concluded his meeting with the unknown man and reentered the red Pontiac, Jones attempted to drive away from the scene. We are of the opinion that these circumstances constituted "some evidence" that the defendant Jones knowingly and constructively possessed heroin.
Since we find some evidence of the offense and each element thereof as to both defendants, the trial judge properly denied defendants' motions for a directed verdict of acquittal. Hence, this assignment of error lacks merit.

DECREE
For the reasons assigned, the conviction and sentence of Oliver Marks are affirmed. The conviction of Herbert Jones, Jr. is affirmed, but the case is remanded to the trial court for the purpose of correcting his sentence by deleting therefrom the provision denying him the benefit of consideration for parole; otherwise, the sentence of Herbert Jones, Jr. is to remain in full force and effect.
*1186 DIXON, J., concurs, not agreeing with treatment of assignments 4, 5 and 6.
CALOGERO, J., concurs in affirmation of the conviction of defendant Marks, dissents from affirmation of Jones' conviction, believing there was no evidence to prove his guilt of the crime charged.
NOTES
[1] We note, under the authority of article 920(2) of the Code of Criminal Procedure, that the sentence imposed by the trial judge on Herbert Jones, Jr. included "without benefit of parole." La.R.S. 40:966 provides only that the term of imprisonment be "without benefit of probation or suspension of sentence." The trial judge is not authorized to exclude a person convicted under La.R.S. 40:966 from consideration for parole. Hence, the case must be remanded to the trial court for the purpose of correcting the sentence by deleting therefrom the provision denying defendant, Herbert Jones, Jr., the benefit of consideration for parole. La.Code Crim.P. art. 882 (1966).
[2] Assignment of Error No. 7 was neither briefed nor argued to this court. Hence, we consider it to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975).
[3] Act No. 527, § 1 of 1975, effective September 12, 1975, amended article 778 of the Code of Criminal Procedure to eliminate the authority of the trial judge to direct a verdict of not guilty in a jury trial. Defendants herein were indicted by the grand jury on September 4, 1975 (prior to the effective date of this amendment). The trial judge, without objection from the state, stated that since the indictment was returned prior to the effective date of the amending statute, he would permit defendants to make the motions for a directed verdict of acquittal. The trial judge was incorrect in considering the merits of these motions. Since the amendment eliminating the authority of the court to grant a directed verdict of not guilty in a jury trial is a procedural matter attached to trial, the amendment did not affect any substantive rights of the accused. In other words, there was no divesting of a substantive right as a result of this amendment. Nevertheless, in fairness to the defendants, we will review the merits of these motions since the trial judge's incorrect consideration of them might have caused defendants not to have subsequently raised the issue of no evidence of an essential element of the crime charged in their motions for a new trial.