369 So.2d 1347 (1979)
STATE of Louisiana
v.
John Robert JORDAN.
No. 63482.
Supreme Court of Louisiana.
April 9, 1979.
Felix J. Bruyninckx, III, Coenen & Berry, Rayville, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Johnny C. Parkerson, Dist. Atty., Nancy F. Gilliland, Asst. Dist. Atty., for plaintiff-respondent.
BLANCHE, Justice.
Defendant, John Robert Jordan, was arrested for violation of Section 10-27 of the Monroe City Code (Disturbing the Peace). A search of the defendant incidental to this arrest produced a small prescription bottle containing Diazepam. Subsequently, defendant was charged by bill of information with possession of a controlled dangerous substance under LSA-R.S. 40:969. The defense filed a motion to suppress the evidence on the grounds that it was the product of an illegal search. After a hearing on *1348 November 8, 1978, the trial judge denied the motion. Upon application of the defendant, this Court granted writs on December 8, 1978, to consider the correctness of the trial court's ruling. We reverse.
Defendant, his brother, and a co-worker got off work early in the afternoon of May 18, 1978. Because it was defendant's last day of work, the men celebrated by drinking some alcoholic beverages. Later, the three men drove around in the car of defendant's father. Defendant went to sleep in the back seat of the car, admittedly under the influence of alcohol. The coworker, Billy Ray Gibson, drove and James Michael Jordan, defendant's brother, sat on the passenger's side of the front seat. As the men continued riding around town, defendant's brother threw an empty beer can out of the automobile onto a sidewalk. An off-duty Monroe police department officer, in civilian clothes and in an unmarked vehicle, yelled to James Michael Jordan about his throwing the empty beer can out of the car. James Michael told the police officer to "Go to hell" and made an obscene gesture toward him. The police officer than chased the men and attempted to force their vehicle over to the side of the road. The police officer pulled alongside of the car, showed a badge and identified himself as a police officer, and at that time Billy Ray Gibson pulled into a parking lot of a convenience store that was nearby. Defendant's brother then tried to change places with Gibson and drive off, but was stopped by several Monroe City police units who arrived at the scene. The police officers arrested James Michael Jordan for driving while intoxicated and asked him to get out of the automobile. Gibson was also arrested for negligent driving.
Officer John Pipes, one of the police who had been summoned to aid in the traffic stop, reached into the back seat of the car in order to awaken the defendant Jordan and bring him out of the car. The officer testified that Jordan was still asleep and that he had to give Jordan several vigorous shakes in order to bring him to consciousness. Pipes further testified that his primary motive for waking Jordan and removing him from the vehicle was to insure the safety of the officers during the investigation.
The testimony shows that Officer Pipes leaned into the vehicle to "roust out" Jordan. Before awakening Jordan, Pipes checked the car floor and visually inspected the defendant's person for a weapon. Pipes further testified that he noticed what later turned out to be the pill container in the defendant's pants pocket. Although he did not know at that time what the object was, he testified he was satisfied that it was not a weapon.
After the defendant was awakened, he was brought from the car. The evidence established that the defendant was very cooperative and did not verbally abuse the officer in any way. Officer Pipes testified that he talked with the defendant for a minute or so, smelled a strong odor of alcohol and noticed the defendant was unsteady on his feet. The officer concluded the defendant was drunk and placed him under arrest for drunk and disorderly conduct.[1] At this time, Officer Pipes reached into the defendant's pocket and seized a small bottle of pills which were identified as Diazepam.[2] Defendant later was charged with illegal possession of a controlled dangerous substance under LSA-R.S. 40:969.
Defendant claims the evidence seized is the product of an unconstitutional search *1349 and seizure in that the arrest for disturbing the peace (drunk and disorderly) was without probable cause. He claims it was error for the trial judge not to sustain the motion to suppress.
This Court has held that as a general rule, warrantless searches are per se unreasonable and violate a person's federal and state constitutional rights. State v. Jewell, 338 So.2d 633 (La.1976). However, we also noted in Jewell:
"To this general rule, however, historical and practical exceptions have developed justifying warrantless searches under limited, specified circumstancesessentially because of exigent necessity. These include, for instance, a limited search incident to a lawful arrest, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) . . . ." (State v. Jewell, supra at 636)
This Court has held many times that an arresting officer has the right to search a person and seize evidence incident to a lawful arrest. State v. Edwards, 354 So.2d 1322 (La.1978); State v. Taylor, 347 So.2d 172 (La.1977); State v. Marks, 337 So.2d 1177 (La.1976). In connection with the above principle, this Court noted in State v. Marks, supra at 1181, the following:
"Such a search [incident to a lawful arrest] is justified in order to discover weapons that may threaten the safety of the arresting officer and to prevent the concealment and destruction of evidence. It has recently been confirmed that an arrest made in a public place without a warrant is valid if founded on probable cause, regardless of the presence or absence of exigent circumstances. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). But in order to justify a search as incident to an arrest, an arrest must have already occurred and the arrest itself must have been lawful."
Therefore, the sole issue before this Court is whether the arrest was a lawful one.[3] If it was not, the evidence must be suppressed. Whether an arrest is lawful depends upon whether probable cause exists. Article 213 of the Louisiana Code of Criminal Procedure provides, in pertinent part:
"A peace officer may, without a warrant, arrest a person when:
. . . . .
"(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer. . . ."
We held in State v. Marks, supra at 1182:
"Reasonable cause, which we have treated as consonant with the probable cause concept, exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Wood, 262 La. 259, 263 So.2d 28 (1972). Reasonable or probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. . . ."
Officer Pipes testified that he arrested the defendant for drunk and disorderly conduct (disturbing the peace) under Section 10-27 of the Monroe City Code. The question, therefore, is whether Officer Pipes had probable cause to believe the defendant had *1350 violated that provision.[4] The arresting officer testified that when the defendant was removed from the car he was very cooperative. He further testified that the defendant did not in any manner act, or become boisterous or unruly. Hence, the only real conduct upon which a charge under Monroe City Code, Section 10-27 could be based is defendant's act of sleeping in an intoxicated condition, on the back seat of his own automobile.[5] An examination of the Monroe City Code, Section 10-27 is necessary to determine if the conduct described above can be considered violative of that provision.
Section 10-27 of the Monroe City Code, entitled Disturbing the Peace provides:
"It shall be unlawful to commit an act of disturbing the peace.

"Disturbing the peace is the doing of any of the following in such a manner as would foreseeably disturb or alarm the public:
. . . . .
"(3) Appearing in an intoxicated condition. . .."
This provision is identical to LSA-R.S. 14:103 which also prohibits disturbing the peace.
There is no question in the instant case that the officer had reasonable grounds to conclude that the defendant was intoxicated. The sole issue is whether the facts and circumstances known to the arresting officer were sufficient to justify a man of ordinary caution to believe the defendant was acting, or had acted, in a manner which would "foreseeably disturb or alarm the public."
In State v. Heck, 307 So.2d 332 (1975), this Court approved the United States Supreme Court's interpretation of the phrase "[as would] foreseeably disturb or alarm the public" in Garner v. State of Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961). In Garner, the Court, after examining the Louisiana jurisprudence, concluded:
"[T]hese words encompass only conduct which is violent or boisterous in itself, or which is provocative in the sense that it induces a foreseeable physical disturbance." (82 S.Ct. at 253)
Today we reaffirm this interpretation. Since there is no distinction between the state statute and the Monroe ordinance, we find this interpretation equally applicable to both.
Considering the above, we conclude that there was no probable cause to arrest the defendant for disturbing the peace. The State has not offered one scintilla of evidence to sustain a finding that the arresting officer reasonably believed the defendant had at any time acted in a violent, boisterous or provocative manner. Certainly, sleeping in the back of one's own automobile cannot qualify as violent or boisterous conduct, nor is it provocative in the sense that it has a tendency to induce a foreseeable physical disturbance. The State weakly argues that the arrest was justified on the basis that the defendant was too intoxicated to drive the car and it was too far to defendant's home for him to walk. While we agree that it would have been against the defendant's best interests under the circumstances for the police to leave the defendant at the scene, the State had other options besides placing the defendant under arrest.
Having found no probable cause to arrest, we conclude that the search incident to the arrest was also illegal. Any evidence produced as a result of an illegal search and seizure is tainted and thus inadmissible under *1351 the fruit of the poisonous tree doctrine. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); State v. Shivers, 346 So.2d 657 (La.1977). We, therefore, conclude that the trial judge erred in denying defendant's motion to suppress the evidence seized as a result of illegal arrest.

DECREE
The ruling of the district court is reversed and the motion of the defendant to suppress the evidence seized incident to defendant's arrest for drunk and disorderly conduct is granted.
REVERSED.
DIXON, J., concurs with reasons.
DIXON, Justice (concurring).
I respectfully concur, finding no probable cause to stop the car in which the defendant was sleeping.
NOTES
[1] While the testimony is unclear as to whether the officer actually said "you're under arrest" at this particular moment, we deem it immaterial since it is clear the "freedom of the defendants was unmistakably restrained." State v. Marks, 337 So.2d 1177, 1181-82 (La.1976). The officer testified that at the time he observed the above symptoms he decided to arrest the defendant for drunk and disorderly conduct and began a search of the defendant incident to that arrest.
[2] Defendant testified that his father was a pharmacist, and the car in which the men were driving was used for his deliveries. Defendant claimed that he saw the bottle of pills in the back seat of the car, assumed that they had fallen out of a package for delivery, and placed them in his pocket in order to return them to his father later that evening.
[3] The State has not seriously contended that the search and seizure were justified under Code of Criminal Procedure Article 215.1 (Terry Stop). In light of Officer Pipes' testimony that the defendant was only wearing lightweight slacks and a shirt, that he (the officer) had visually inspected the defendant for weapons before awakening him and was satisfied the defendant was not armed, and that the search in which he discovered the pills was made pursuant to the arrest for drunk and disorderly conduct, it is understandable why the State did not push the point. In light of these facts, we find it unnecessary to determine whether the seizure was the product of a lawful "Terry patdown."
[4] The testimony was uncontradicted that the defendant was asleep during the entire episode which caused the group to be stopped by the police. Officer Pipes testified that he had to shake the defendant several times in order to awaken him. We note, therefore, that the defendant could not have been a party to whatever illegal activities the other two men had been engaged.
[5] We note that the instant case is easily distinguishable from State v. Jewell, 338 So.2d 633 (La.1976), cited by the State in its brief. There, the defendant was found sleeping behind the wheel of his car, but the engine was running and the car was parked so as to protrude across the center line of a narrow street in a residential neighborhood. The defendant was awakened and arrested for obstructing the highway.