# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-31063

United States Court of Appeals
Fifth Circuit

**FILED**
February 13, 2020

Lyle W. Cayce
Clerk

CLARENCE DEAN ROY,

> Plaintiff - Appellant

v.

CITY OF MONROE; JAMES BOOTH, in his official and individual capacities,

> Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana

Before JOLLY, HO, and ENGELHARDT, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Clarence Dean Roy, a street preacher of the Christian faith, was issued a summons outside a nightclub in Monroe, Louisiana, after a woman accused him of following her and making inflammatory remarks. The summons, which was issued by Sergeant James Booth of the Monroe Police Department, cleared the way for formal charges under the city of Monroe's "disturbing the peace" ordinance, MONROE CITY CODE § 12-153. Roy was tried and acquitted by a municipal court judge. Shortly thereafter, he brought this lawsuit under 42 U.S.C. § 1983, in which he contends that Booth and the city deprived him of numerous constitutional rights under the First, Fourth, and Fourteenth

No. 18-31063

Amendments. Two district court judges denied relief, first in part and then in whole, respectively. We affirm.

I.

On the night of July 17, 2015, Clarence Roy and several others occupied a public street in Monroe, Louisiana. The area was home to bars and nightclubs, including the Corner Bar, Club Neat, and Live Oaks Ballroom and Lounge. Roy viewed the area as a home to sin and thus a rich prospect for his calling, his message, and his other talents. Roy and his cohort arrived with the purpose of conducting what Roy calls "bar ministry" or "street ministry." Roy testified that his ministry typically consists of preaching the gospel by means designed to "startle or stop" nearby bar patrons. Examples given by Roy include warning patrons about the risk of damnation and preaching against "whores," "drunkards," and wayward others who frequent bars. Personally chastising and harassing patrons for their iniquity was his calling card.

On the night in question, Roy was carrying a six-foot cross and wearing an orange jumpsuit. Officers of the Monroe Police Department arrived on the scene after receiving a complaint about an argument between the former owner of the Corner Bar and a member of Roy's group. One of Roy's "victims," a woman named Jessica Falcon, approached Sergeant James Booth. Falcon reported that Roy had followed her, saying "ugly, lewd things," including that she is a "homosexual," that her "father is the devil," and that she is "going to hell." Roy has denied following Falcon, making these statements, or even "seeing" Falcon on the night of the incident.

Nevertheless, based on Falcon's allegations, Booth issued Roy a summons under the city of Monroe's "disturbing the peace" ordinance. The ordinance reads in relevant part as follows:

(a) It shall be unlawful to commit an act of disturbing the peace.

2

No. 18-31063

(b) Disturbing the peace is the doing of any of the following in such a manner as would foreseeably disturb or alarm the public, or create any dangerous or violent conditions:

. . .

(2) Using profane or threatening language or making obscene remarks, gestures, or indecent proposals to or toward another which in the manner uttered has a tendency to incite an ordinary addressee to violent retaliatory action and a breach of the peace;

. . .

Disturbing the peace shall also include the commission of any act other than that permitted as an exercise of free speech or free assembly guaranteed by the constitutions of the United States and the State of Louisiana, in such a manner as to disturb or alarm the public, or make such a disturbance imminent, or to provoke another or other to retaliatory action or violence.

MONROE CITY CODE § 12-153.

After issuing the summons, Booth recorded his version of events in this unedited "Probable Cause Narrative":

On 7-17-2015 at approx 2247 hours I Sgt. Booth, was in the 500 Blk of North 3rd Street dealing with a distance. There was group of people outside Club Neat and the Connor Bar preaching at the customers. While there I was approached by Jessica N. Falcon. Jessica stated while she was crossing the street from Club Neat to The Connor Bar a while male wearing an orange jump suite caring a large wooden cross Followed her across the street. Jessica stated the man called her a homosexual and because of this she was going to hell. Jessica also stated the man told her that her father was the devil. Jessica stated this offended her and it scared her the way he was following her across the street. Jessica pointed out the suspect to me.

The suspect was id as Clarence D. Roy. Roy told me he was not protesting but preaching. Roy was issued a summon (27563) for disturbing the peace.

The city continued with its prosecution, charging Roy in a bill of information. His case was tried to the bench in Monroe City Court, and he was

No. 18-31063

acquitted. Roy resumed his street ministry at the same location, without incident, for nearly a year before retiring from the cause in 2017.

## II.

Shortly after his acquittal, however, Roy filed suit in the Western District of Louisiana under 42 U.S.C. § 1983. His complaint alleged that Booth and the city had deprived him of numerous constitutional rights, including the First Amendment rights to free speech and free exercise of religion, the Fourth Amendment right to be free from unreasonable seizures, and the Fourteenth Amendment right to due process of law. Roy sought legal, equitable, and declaratory relief, including a "judgment and decree declaring [that] the challenged portions of [the ordinance] are unconstitutional on their face and as applied."

Roy's suit was first considered by one district judge before being assigned to a different judge; each judge issued separate rulings. Booth and the city moved for summary judgment on all claims, and the first district judge granted summary judgment in part. The judge rejected Roy's contention that the ordinance is facially unconstitutional under the First and Fourteenth Amendments, reasoning that the ordinance is content neutral and that it satisfies the constitutional requirements for content-neutral regulations of speech. Relying on this same analysis, and adding that Roy failed to meet his burden under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), the court also rejected what Roy calls his "Due Process claim," *i.e.*, his claim that the city violated the Fourteenth Amendment by enforcing an unconstitutional ordinance against him. Finally, deciding that Roy was neither searched nor seized, the court dismissed Roy's Fourth Amendment claims for "malicious prosecution" and "false arrest."

Some of Roy's claims survived, however. Most notably, the district court allowed Roy to proceed on his claims that: (1) Booth's issuance of the summons

4

was unlawful retaliation for Roy's protected expression (the "First Amendment retaliation claim") and (2) the city's ordinance violated the First Amendment as interpreted and enforced against Roy (the "as-applied challenge"). With respect to these claims, the district court declined to award summary judgment because there was a genuine issue of fact as to whether Booth's actions were supported by probable cause.

As noted, the case was then transferred to a second judge. Booth and the city filed a motion to reconsider the first judge's rulings, arguing that the first judge erred by declining to grant summary judgment to Booth on qualified immunity grounds. Roy moved to reopen discovery, but the court denied that motion. Then, on the merits, the district court again held in favor of the defendants, premising Booth's qualified immunity on its finding that "reasonable police officers could [have believed that] probable cause existed." After this second order, Roy was left with only claims for injunctive and declaratory relief. The district court thus struck Roy's jury demand *sua sponte* and conducted a one-day bench trial instead.

Two days after trial, the district court rejected all of Roy's remaining claims. The court first dismissed Roy's claims for injunctive and declaratory relief against Booth, holding that Booth's departure from the Monroe Police Department mooted any claim for prospective relief. Then, addressing Roy's First Amendment claims against the city, the district court further held that Roy had not established a violation of his First Amendment rights because Booth had probable cause to arrest him and, in any event, Booth was not motivated by Roy's protected expression. Finally, the district court held that Roy had failed to make a sufficient showing with respect to his entitlement to injunctive and declaratory relief. A judgment was entered dismissing the entire suit with prejudice. That judgment is now before us.

No. 18-31063

III.

On appeal, Roy argues that the district court erred by: (1) dismissing his facial and as-applied constitutional challenges to the ordinance, (2) awarding qualified immunity to Booth, (3) denying his motion for additional discovery, (4) rejecting what he calls his "Due Process claim" against the city of Monroe, and (5) dismissing his claims for "malicious prosecution" and "false arrest" under the Fourth Amendment. Because we (1) reject Roy's challenges to the constitutionality of the ordinance, (2) find that Booth's actions were supported by probable cause, and (3) uphold the district court's denial of the motion to reopen discovery, we find that no error was committed by the district court in its dismissal of the suit.

A.

We first address Roy's facial and as-applied challenges to the ordinance. "Although litigants are permitted to raise both as-applied and [facial] challenges," the "lawfulness of the particular application of the law should ordinarily be decided first." *Serafine v. Branaman*, 810 F.3d 354, 362 (5th Cir. 2016) (quoting *Bd. of Trs. v. Fox*, 492 U.S. 469, 485 (1989)).

Here, however, Roy's as-applied appellate arguments are wholly derivative of his arguments challenging qualified immunity. Indeed, Roy has done no more than cross-reference the qualified-immunity section of his brief: "[f]or the reasons set forth above, the [second] District Court Judge erred in granting Booth qualified immunity, [so] Roy's as-applied claims should be remanded to be addressed on their merits."

For reasons stated *infra*, we have found that Roy's qualified-immunity arguments lack merit. Thus, we decline to make further comment on the district court's disposition of the as-applied challenge. "Failure adequately to brief an issue on appeal constitutes waiver of that argument." *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004). Roy has

6

not briefed any non-derivative argument in support of his as-applied challenge and, accordingly, any such further argument is waived.

We thus consider the merits of only Roy's facial challenge to the ordinance, reviewing *de novo* whether the district court erred by granting summary judgment; however, we may "affirm the district court's decision on any ground supported by the record, even if it was not the basis for the judgment." *Gonzalez v. Huerta*, 826 F.3d 854, 856 (5th Cir. 2016) (quotation omitted). "Courts generally disfavor facial challenges, and for good reason." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013). Facial challenges have been held to "rest on speculation" and "raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.'" *Gibson v. Texas Dep't of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008)).

The only facial challenge that Roy has adequately briefed pertains to the ordinance's catch-all provision, which prohibits "any act other than [constitutionally protected expression or assembly] in such a manner as to disturb or alarm the public, or make such a disturbance imminent, or to provoke another or other to retaliatory action or violence." MONROE CITY CODE § 12-153. Roy argues that the catch-all provision is unconstitutionally vague and that the district court erred by concluding otherwise.[1]

Though ordinances like the one at issue, which threaten to restrict First Amendment freedoms, call for a "more stringent vagueness test," Roy nonetheless faces a "daunting" burden given the facial nature of his challenge.

---

[1] Roy has not preserved the question of overbreadth. Roy's brief states in conclusory fashion that the city's ordinance "is unconstitutionally overbroad," but we are not prepared to weigh in on a constitutional question when the party raising it has failed to cite any authority or evidence. *See Procter & Gamble*, 376 F.3d at 499 n.1.

No. 18-31063

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *Steen*, 732 F.3d at 387.  We may reverse the district court only if the city's ordinance "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes . . . arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).  We will not hold that the ordinance is unconstitutionally vague on its face if "it is clear what the ordinance as a whole prohibits" or if the ordinance "is surely valid in the vast majority of its intended applications." *Id.* at 733.

Roy does not argue that the ordinance fails to provide fair notice of the conduct it prohibits; instead, he argues only that the ordinance "permits 'arbitrary and discriminatory enforcement,' as evidenced by the events in this case."  Standing alone, it may be reasonable to suppose that a prohibition on "any act [undertaken] in such a manner as to disturb or alarm the public" fails meaningfully to guide the police and thus poses a substantial risk of arbitrary or discriminatory enforcement. *Cf. Cox v. Louisiana*, 379 U.S. 536, 551–52 (1965); *City of Chicago v. Morales*, 527 U.S. 41, 51–55 (1999).  But, when entertaining a facial challenge to state or municipal legislation, "[v]agueness can be ameliorated by a state court's authoritative interpretations, if they provide sufficient clarity." *Serv. Emps. Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 597 (5th Cir. 2010).

Such is the case, here.  The catch-all provision here is substantially similar to language interpreted by the Louisiana Supreme Court in *State v. Jordan,* 369 So.2d 1347 (La. 1979), which addressed an earlier version of the city ordinance at issue in this case. *Id.* at 1350.  In *Jordan*, the Louisiana Supreme Court held that conduct is in "a manner which would *foreseeably* disturb or alarm the public" only when that conduct "is violent or boisterous in itself, or . . . provocative in the sense that it induces a foreseeable physical

8

disturbance."[2] *Id.* (emphasis added and quotations omitted). Although we are aware that the catch-all provision in the current version of the city's ordinance omits the one word "foreseeably," we find that the *Jordan* construction applies nevertheless. Louisiana courts have tended to apply the construction in similar circumstances. *See Craig v. Carter*, 30625, p.3–4 (La. App. 2 Cir. 9/23/1998), 718 So. 2d 1068, 1071 (applying construction to current version of the city's ordinance in case involving inflammatory speech). And, in any event, we are duty-bound to apply any narrowing construction to which the catch-all provision is "fairly susceptible." *See Netherland v. Eubanks*, 302 F. App'x 244, 246 (5th Cir. 2008) (quoting *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 770 n.11 (1988)).

Applying the *Jordan* construction to the catch-all provision, we cannot agree that it is unconstitutionally vague in describing what the "ordinance as a whole prohibits." *Hill*, 530 U.S. at 733. The conduct prohibited by the catch-all provision, like the conduct described by the ordinance's enumerated prohibitions, must be violent, or boisterous, or provocative. Although we may question whether, standing alone and without context, a prohibition on "boisterous" conduct would survive an overbreadth challenge, we reiterate that Roy has failed to preserve the issue of overbreadth. *Cf. Hill*, 530 U.S. at 739–40 (Souter, J., concurring) (a statute is not vague when it "fails to limit very much at all," but rather when it "fails to limit clearly"). We are instead asked to consider whether the catch-all provision's prohibition on violent, boisterous, and provocative conduct is sufficiently clear to satisfy the fair notice

---

[2] The pedigree of this construction can be traced directly to the Supreme Court's decision in *Garner v. Louisiana*, 368 U.S. 157 (1961), which applied the same construction to Louisiana's statewide disturbing the peace statute and held that the statute did not prohibit a peaceful sit-in at a segregated lunch counter. *Id.* at 159–74.

requirement of the Due Process Clause of the Fourteenth Amendment. We conclude that it is.

"Violence," "boisterousness," and "provocativeness" are concepts familiar to "common usage and everyday speech." *Doe I v. Landry*, 909 F.3d 99, 118 (5th Cir. 2018). Our circuit has resisted vagueness challenges when the challenged law is couched in "commonly understood" language, *id.*, because such language tends to provide notice to the public and meaningful guidance to the authorities. Here, we are confident that in most cases it will be clear whether a defendant's conduct offends the catch-all provision. To take one example: the Louisiana Supreme Court found in *Jordan* itself that the police lacked probable cause under the ordinance because the suspect had engaged only in non-violent, non-boisterous, non-provocative conduct (sleeping drunkenly in the back of an automobile). 369 So. 2d at 1350.

We also disagree with Roy that the facts of this case illustrate the vagueness of the catch-all provision. Indeed, this case demonstrates that the provision is constitutionally sufficient. Roy testified that the Monroe Police Department allowed him to engage in "street ministry" both before and after the night in question. Booth testified that, on the night Roy did receive a summons, he was perceived to be guilty of conduct and inflammatory speech sufficiently provocative to invite the violent retaliation of those he targeted personally. In the picture that emerges, Monroe police officers make reasonable distinctions between protected expression and forbidden provocation.

Indeed, the Louisiana cases applying the *Jordan* construction have had little difficulty distinguishing between prohibited and permissible conduct. *Compare State v. Stowe*, 93-2020, (La. 4/11/1994) 635 So. 2d 168, 170, 172 n.3 (suspect properly arrested for disturbing the peace after punching through a window, making threats, wandering into traffic, and cursing loudly) *and State*

No. 18-31063

*v. Heck,* 307 So.2d 332, 333-34 (La. 1975) (defendants properly charged with disturbing the peace after engaging in a fistfight) *with State v. Lindsay*, 388 So.2d 781, 783 (La. 1980) (no disturbance of the peace where defendant was intoxicated on his own property) *and State v. Champagne,* 520 So.2d 447, 451 (La. Ct. App. 1988) (defendant did not disturb the peace by knocking on the window of a squad car to rouse a police dog).  The Supreme Court has held that it is evidence of vagueness when courts are unable to converge on a workable standard.  *Johnson v. United States*, 135 S. Ct. 2551, 2558 (2015).  Here, the courts have not had to struggle to apply the law to a diverse array of factual scenarios.

In sum, we find that the ordinance satisfies the requirements of due process.  We thus hold that the ordinance is not unconstitutionally vague.

B.

We next examine whether the district court erred by holding that Booth is entitled to qualified immunity and, in the process, consider the scope of Roy's appeal, the nature of Roy's claim, the clearly established law applicable to that claim, and the reasonableness of Booth's conduct in the light of that law.  The district court held that Booth was entitled to qualified immunity because he "took a firsthand complaint from an alleged victim" after "observing her demeanor and physical manifestations" and thus could not have been "on fair notice" that his "issuance of a citation and summons to Roy would violate Roy's . . . rights."

Roy makes three separate arguments that purport to challenge this holding: (1) that the district court defined "clearly established law" with too much specificity, (2) that the district court considered the wrong clearly established right in its qualified immunity analysis, and (3) that the district court erred in determining that Booth's actions could reasonably be thought supported by probable cause.

11

No. 18-31063

Typically, to prevail on a motion for summary judgment, the moving party must show "that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  A fact is "material" if and only if proof of its existence might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There exists a "genuine dispute" about a material fact, as indeed Roy argues, when the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Id.*  Notwithstanding: a "good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (quotation omitted).  The burden is thus shifted because qualified immunity "is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted).

Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quotation omitted).  The plaintiff's burden is a formidable one.  The plaintiff must show both that the defendant violated the plaintiff's rights and that those rights were "clearly established" at the time of the violation. *Orr*, 844 F.3d at 492.  For a right to be clearly established, it must be "beyond debate" that the defendant's conduct was unlawful. *al-Kidd*, 563 U.S. at 741.

On appeal, Roy asserts only one "clearly established" right to have been violated: in his words, "the right to be free from being arrested for exercising free speech."  Roy has thus narrowed the scope of our inquiry solely to whether the district court erred by awarding qualified immunity to Booth on Roy's First Amendment retaliation claim, *i.e.*, the claim that Roy was targeted for harassment and criminal prosecution because Booth opposed his religious

12

expression.[3] *See Gonzalez*, 826 F.3d at 856; *Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007) (this court will not "raise and discuss legal issues that [the appellant] has failed to assert").

To prevail on a First Amendment retaliation claim, however, plaintiffs must plead and prove the absence of probable cause.[4] *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019). It follows that, at summary judgment, Roy could not rebut Booth's qualified immunity defense without, first, producing evidence that Booth's summons was unsupported by probable cause and, second, establishing that the absence of probable cause would have been apparent to any reasonable officer in Booth's position. *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (holding, in a First Amendment retaliation suit, that "[i]f probable cause existed . . . or if reasonable police officers could believe probable cause existed," then the defendants would be "exonerated" from liability).

Roy has principally relied on four cases to establish the absence of probable cause. First, he has attempted to draw an analogy between this case and two non-binding district court decisions, *Harris v. City of Bastrop,* No. CV 15-0761, 2016 WL 3948107, at *6 (W.D. La. July 19, 2016), and *Robertson v. Town of Farmerville*, 830 F. Supp. 2d 183, 188 (W.D. La. 2011). But, in the absence of controlling authority on point, a "*robust* consensus . . . of persuasive authority" is necessary to overcome the defense of qualified immunity. *See al-*

---

[3] We do not address whether Roy has shown that his constitutional rights were violated because he was targeted for his religious views. For reasons stated in the body of this opinion, this appeal is resolved by our holding that the ordinance is constitutional and our finding that Booth's summons for violating that ordinance was supported by probable cause.

[4] The Supreme Court has recognized a "narrow" exception to this rule where the "plaintiff presents objective evidence that he was arrested [and that] otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727. Our review of the record has not turned up any such evidence. On the contrary, the record reveals that Roy, the most "similarly situated" individual of all, was allowed to conduct street ministry both before and after the night in question, without any harassment from the police.

No. 18-31063

*Kidd*, 563 U.S. at 741–42 (emphasis added).  Two non-binding district court opinions hardly constitute a "robust consensus."[5]

Next, Roy relies on a third case, *Evett v. DENTFF*, 330 F.3d 681 (5th Cir. 2003), which, according to Roy, stands for the proposition that an officer lacks probable cause when he fails to search for all available facts "tending to dissipate probable cause."  Roy argues that Booth lacked probable cause and should have known it because, like the officer in *Evett*, he failed to investigate further after receiving an uncorroborated statement.  But Roy's argument puts more weight on *Evett* than the case allows.  In *Evett*, the officer's failure to conduct further investigation meant that the officer's probable cause determination hinged on nothing more than the unsubstantiated statement of another officer—a statement that, even if believed, established only a tenuous connection between the suspect and any criminal activity.  330 F.3d at 687–89.

Here, by contrast, no further investigation was necessary because Booth was relying on the personal knowledge of a witness and victim of the alleged conduct.  *Johnson v. Bryant*,[6] No. 94-10661, 1995 WL 29317, at *3 (5th Cir. Jan. 17, 1995) (unpublished) ("A victim's accusation identifying an individual as the perpetrator is generally sufficient to establish probable cause."); *United States v. Burbridge*, 252 F.3d 775, 778 (5th Cir. 2001) (an eyewitness identification will establish probable cause "unless, at the time of the arrest,

---

[5] In any event, *Harris* and *Robertson* are distinguishable.  In *Harris*, probable cause was not established because genuine factual disputes made it unclear whether the arresting officers had reason to suspect the plaintiff of anything more than "us[ing] a few curse words" that were not "directed at the police officers or anyone else."  *Harris*, 2016 WL 3948107, at *1, *6.  Similarly, in *Robertson*, there was a genuine dispute whether the police had *any* reason to suspect the plaintiff of various traffic violations.  830 F. Supp. 2d at 188.  Here, there is no dispute that Booth relied on the victim's specific statement that Roy had stalked her while making inflammatory remarks.  For reasons stated in-text, this allegation was credible enough to create probable cause.

[6] Although *Johnson* is an unpublished opinion, it is precedential because it was issued prior to January 1, 1996.  5th Cir. R. 47.5.3.

there is an apparent reason for the officer to believe that the eyewitness was lying [or mistaken]").  Indeed, we have previously held officers' probable cause determinations reasonable in similar circumstances.  *See Bone v. Dunnaway*, 657 F. App'x 258, 261 (5th Cir. 2016) (per curiam) (witness statement made reasonable officer's belief that there was probable cause under a New Orleans disturbing the peace ordinance); *Cooper v. City of La Porte Police Dep't*, 608 F. App'x 195, 200 (5th Cir. 2015) (per curiam) (officer made a reasonable probable cause determination by relying on eyewitness accounts conveyed "over the phone and at the scene").  Roy's analogy to *Evett* fails.

Finally, Roy cites our decision in *Vance v. Nunnery*, 137 F.3d 270 (5th Cir. 1998), to support his theory that Booth clearly lacked probable cause because he failed to corroborate Falcon's allegations.  In *Vance*, an officer was found to lack probable cause because he relied on witness statements that did not connect the suspect with the crime under investigation.  469 F.3d at 276–77.  Booth, however, relied on Falcon, a victim who claimed personal knowledge and who identified Roy as the perpetrator, a clear connection between the suspect and the relevant offense.  Thus, *Vance* does not even apply to the situation here.  Moreover, it is far from the kind of "clearly established law" that would make Booth's probable cause determination unreasonable.

In sum, we find that Roy has failed to carry his summary judgment burden.[7]  Roy has not shown that Booth's issuance of the summons was

---

[7] Roy complains that he would have been better able to satisfy his summary judgment burden had the district court granted his motion to reopen discovery.  But a party moving to reopen discovery must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."  *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 423 (5th Cir. 2016) (citations and quotations omitted).  Roy has argued that the district court should have granted him additional discovery so that he could retain "experts showing that a certain case or certain training" would have made Booth aware that he was violating Roy's clearly established rights.  But Roy alleged in his complaint that "Booth knew at the time [of the incident that]

unsupported by probable cause or, much less, that a reasonable officer would have known that it was unsupported. On the contrary, our decisions in *Johnson*, *Burbridge*, and other comparable cases convince us that probable cause supported Booth's summons. His reliance on the purported victim was justified because there was no "apparent reason" to disbelieve her account. We affirm the district court's ruling that Booth is entitled to qualified immunity.

## C.

Having addressed the constitutionality of the ordinance and Booth's entitlement to qualified immunity, we find that each of Roy's remaining issues has been resolved. First, Roy challenges the district court's dismissal of what he calls his "Due Process claim" against the city. The due process violation alleged, however, is that the city deprived Roy of his right to be free from prosecution under an unconstitutional ordinance. We have already rejected Roy's constitutional challenges to the ordinance. His "Due Process claim" has thus been decided by that holding.[8]

Similarly, Roy argues that the district court erred by dismissing his Fourth Amendment claims, which he frames in the language of "malicious prosecution" and "false arrest." But there is "no . . . freestanding constitutional

---

statements in his [Probable Cause Narrative] did not satisfy the elements of probable cause." Roy thus had ample incentive, during the *original* discovery window, to retain any experts capable of showing that Booth knew he lacked probable cause when he issued the summons. Furthermore, his failure to do so suggests that no facts "susceptible of collection within a reasonable time frame" could have influenced the outcome of the summary judgment proceedings below.

[8] Moreover, and as the district court pointed out, Roy's "Due Process claim" is defeated by his failure to produce evidence satisfying the prerequisites of municipal liability under *Monell*. To establish municipal liability in a § 1983 case, a plaintiff must adduce proof of three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Here, having rejected Roy's challenges to the ordinance and having determined that Sergeant Booth's summons was supported by probable cause, we cannot say that a reasonable trier of fact could find that the Due Process Clause was violated by the city, much less that the violation's moving force was a city policy or custom.

right to be free from malicious prosecution" or false arrest. *Castellano v. Fragozo*, 352 F.3d 939, 945, 953 (5th Cir. 2003) (en banc).  In this respect, Roy is entitled to relief, if at all, only because Booth's issuance of a summons violated Roy's Fourth Amendment right to be free from unreasonable seizures. The district court held that the issuance of a misdemeanor summons is not a "seizure" implicating Fourth Amendment rights.  Perhaps for this reason, Roy's brief addresses only whether Roy's receipt of a summons was a "seizure," not whether the seizure, if any, was unconstitutional.

However, the question of whether a "seizure" occurred is moot because it is plain that any seizure was not "unreasonable."  *See* U.S. Const. amend. IV. We have already held that Booth's issuance of the summons was supported by probable cause.  Accordingly, even if Booth had made an arrest, the arrest would not have violated the Fourth Amendment.  *See Lockett v. New Orleans City*, 607 F.3d 992, 997 (5th Cir. 2010).

## IV.

To sum up: in this opinion, we have decided that the city of Monroe's "disturbing the peace" ordinance is not unconstitutionally vague; that, because Sergeant Booth had probable cause to issue a summons under the ordinance, he was entitled to qualified immunity from Roy's First Amendment retaliation claim; and that, in the light of these holdings, Roy cannot prevail on his claims under the Fourth Amendment and Due Process Clause.  The judgment of the district court is

AFFIRMED.