395 So.2d 647 (1980)
STATE of Louisiana
v.
Jay Dennis GOULD.
No. 67286.
Supreme Court of Louisiana.
October 6, 1980.
On Rehearing February 4, 1981.
Rehearing Denied March 20, 1981.
*648 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Judith Lombardino, Asst. Dist. Attys., for plaintiff-appellee.
J. Michael Johnson, Thomas P. Anzelmo, Sr., McGlinchey, Stafford & Mintz, New Orleans, for defendant-appellant.
MARCUS, Justice.
Jay Dennis Gould was charged by bill of information with armed robbery in violation La.R.S. 14:64. After trial by jury, defendant was found guilty as charged and sentenced to serve forty years at hard labor. A motion for appeal was filed but thereafter defendant escaped from the custody of the criminal sheriff. As a result, the trial judge refused to order an appeal. Nine years later,[1] the trial court granted defendant an out-of-time appeal. He relies on fourteen assignments of error for reversal of his conviction and sentence.[2]

ASSIGNMENTS OF ERROR NOS. 3, 7, 8, 10 AND 11[3]
Defendant contends the trial judge erred in denying his motion to suppress physical evidence grounded on a claim that his arrest was made without probable cause (Assignment of Error No. 3) and that the money (Assignment of Error No. 7), raincoat (Assignment of Error No. 8), suitcase (Assignment of Error No. 10), and hold-up note (Assignment of Error No. 11) seized after his illegal arrest was improperly received in evidence at trial.
The record reflects the following facts.[4] On March 17, 1970, at approximately 1:28 p. m., Officers Donald Eskridge and John Graham were patrolling in their police vehicle when they received a radio report of an armed robbery at the Bank of Louisiana at 246 Loyola. They proceeded towards that location, but were instructed that another patrol car had arrived on the scene and that they were to cruise the vicinity. Shortly thereafter, the officers received a radio report providing a description of the suspect: a white male, approximately 5'9" tall and weighing about 150 pounds, fair complexion, brown hair, wearing a yellow rain slicker, and driving a blue automobile. A subsequent call provided the model, color, and license number of the automobile as well as the address of the registered owner (defendant). The officers were proceeding to that address when, a few blocks away, an unidentified black male flagged them down and asked if they were looking for a white *649 male who had jumped out of a blue vehicle carrying a suitcase. When the officers replied affirmatively, the man told them that such a man had been running along Esplanade when he had seen another patrol car pass and had then run into a grocery store at 839 Esplanade.
The officers entered the store which was occupied by the cashier, a mailman who was leaving, and defendant who was hurriedly attempting to get out the rear door which was locked. Defendant then crouched behind a food rack as the officers proceeded to the rear of the store with their guns drawn. Officer Graham advised defendant to put up his hands and defendant complied and said, "Don't shoot. I give up." Defendant was then told that he fit the description of a subject wanted for armed robbery and he was placed under arrest and informed of his Miranda rights. The suitcase which was within six inches of defendant at the time of the arrest was then searched by Officer Eskridge and found to contain the yellow rain slicker, the note used in the robbery, and two thousand five hundred and fifty-four dollars including $750 in "bait money."
This court recently held in State v. Tomasetti, 381 So.2d 420 (La.1980):
It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonablesubject only to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of these exceptions is a search incident to a lawful arrest made of a person and the area in his immediate control. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Such a search is justified in order to discover weapons that may threaten the safety of the arresting officer and to prevent the concealment and destruction of evidence. It has been recently confirmed that an arrest made in a public place without a warrant is valid if founded on probable cause, regardless of the presence or absence of exigent circumstances. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). But, in order to justify a search as incident to an arrest, an arrest must have already occurred and the arrest itself must have been lawful. State v. Marks, 337 So.2d 1177 (La.1976). Finally, when the constitutionality of a warrantless search is at issue at a suppression hearing, the state must bear the burden of affirmatively showing that it was justified under one of the exceptions to the warrant requirement. State v. Adams, 355 So.2d 917 (La.1978); State v. Franklin, 353 So.2d 1315 (La.1977).
In order to ascertain the validity of the seizure of the suitcase and its subsequent search in this case, we must determine whether the arrest was based upon probable cause to believe that defendant had committed a crime.
A warrantless arrest, no less than an arrest pursuant to a validly-issued warrant, must be based on probable cause. State v. Tomasetti, supra; State v. Thomas, 349 So.2d 270 (La.1977). Probable cause exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Marks, supra. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Tomasetti, supra; State v. Marks, supra. Compliance with these standards is in the first instance a substantive determination to be made by the trial judge from the facts and circumstances of the case. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Marks, supra.
In the instant case, the officers had heard official radio reports that the Bank of Louisiana at 246 Loyola had been robbed, and they had been furnished with a detailed *650 description of the robber and his automobile. Within a short time after the robbery and only a few blocks from the address of the registered owner of the getaway car, the officers heard from a citizen informer that a white male with a suitcase had abandoned a blue automobile, had begun to run up the street, and had run into a grocery store upon spotting a police car. The only white male in the grocery store fit the description they had received and was attempting to flee through a rear door. After attempting to hide behind a food rack, when confronted by the officers, defendant said, "Don't shoot. I give up." We conclude that ample probable cause existed prior to the arrest of defendant. Accordingly, since the arrest was constitutionally valid, the seizure of the suitcase from defendant and its subsequent search were permissible as incident to his lawful arrest. The suitcase was within defendant's immediate possession and control at the time of his arrest.[5]
Hence, the trial judge did not err in denying defendant's motion to suppress and in admitting the money, raincoat, suitcase and hold-up note in evidence at trial.
Assignments of Error Nos. 3, 7, 8, 10 and 11 are without merit.

ASSIGNMENT OF ERROR NO. 6
Defendant contends the trial judge erred in denying his motion to represent himself.
At trial, defendant was represented by retained counsel. Near the conclusion of the testimony of the first witness, counsel for defendant made an oral motion for the court to permit defendant to represent himself with counsel's assistance. The trial judge denied the motion. No objection was made or a bill of exceptions reserved to the adverse ruling. Later, defendant announced in court, "I would like another attorney." The trial judge denied the request.
Under the then applicable La.Code Crim.P. art. 841:
An irregularity or error in the proceedings cannot be availed of after verdict unless it is objected to at the time of its occurrence and a bill of exceptions is reserved to the adverse ruling of the court on such objection. Failure to reserve a bill of exceptions at the time of an adverse ruling of the court operates as a waiver of the objection and as an acquiescence in the irregularity or ruling.
In view of the fact that no objection was made or a bill of exceptions reserved to the trial judge's adverse ruling on defendant's motion to represent himself, nothing is presented for our review.[6]
In any event, pretermitting the question as to whether the trial judge erred in denying defendant's right to represent himself without further inquiry into the circumstances,[7] defendant's motion was not timely made. A defendant who waits until after commencement of trial to assert for the first time his right to represent himself, after having acquiesced throughout pretrial *651 procedures and the institution of trial, cannot thereafter successfully assert that right unless he makes a showing that the prejudice to his legitimate interest overbalances the potential disruption of the proceeding already in progress. State v. Hegwood, 345 So.2d 1179 (La.1977); State v. Nix, 327 So.2d 301 (La.1975). There was no showing of prejudice here. Likewise, the trial judge properly denied defendant's request to be represented by another attorney after trial had commenced. See State v. Lee, 364 So.2d 1024 (La.1978); State v. Leggett, 363 So.2d 434 (La.1978); State v. Wiggins, 337 So.2d 1172 (La.1976).
Assignment of Error No. 6 is without merit.

ASSIGNMENT OF ERROR NO. 9
Defendant contends the trial judge erred in allowing in evidence, over his objection, six photographs without requiring introduction of the entire series of photographs from which the six were selected. He argues that the other photographs might have been favorable to him.[8]
At trial, Gerald Penton, operation manager at Armored Central Alarm Systems, testified that the camera surveillance system at the Bank of Louisiana at 246 Loyola was activated on March 17, 1970. Penton later removed the film and processed it in the presence of the FBI and the New Orleans Police. Penton enlarged six of the 840 frames which depict a bulge in defendant's pocket that could have been a gun. These photographs were introduced in evidence along with the film consisting of the 840 frames (S-12 through S-15). Defendant had no objection to the introduction of the film.
It is well settled that the prosecution may not suppress evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material to either guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Williams, 349 So.2d 286 (La.1977). At no time during trial did defendant request processing of the other 834 frames which were in fact introduced in evidence. Also, there was no showing that this evidence would have been favorable to the accused or that it constituted material evidence under Brady and Agurs. Hence, we do not find that the trial judge erred in allowing the six photographs from the sequence in evidence.
Assignment of Error No. 9 is without merit.

ASSIGNMENT OF ERROR NO. 12
Defendant contends the trial judge erred in denying his motion for a new trial grounded on a claim that there was no evidence that defendant was armed with a dangerous weapon, an essential element of the crime of armed robbery.[9]
The record reflects that early in the afternoon of March 17, 1970, defendant placed *652 a note on the counter of a window at the bank where Mrs. Della Dunn worked as a teller. The note read as follows:
DON'T TALK! ACT NATURAL! PUT ALL THE BUNDLED MONEY IN THE SACK FIRST. NOW PUT THE REST OF THE MONEY IN. BE CALM & RELAXED AND YOU "WON'T GET "SHOT!" DON'T LET ANYONE FOLLOW ME.
After she read the note, defendant told Mrs. Dunn to pick up the bag that was in the window and said, "Hurry up. Fill it up." Mrs. Dunn testified that she was very frightened and that she thought defendant had a gun and believed that he would shoot her. She stated that he kept his hands down and put his hand in his pocket.
Gerald Penton testified that, while he did not actually see a gun in the photographs he processed, he did see what could have been a gun in the right-hand pocket of the coat bulging. Two of the six photographs (S-4 through S-9) introduced in evidence depict a bulge in the right-hand pocket of defendant's raincoat (the other four photographs were lost or destroyed subsequent to the trial of the matter).
Officer Eskridge testified that after the arrest defendant volunteered that, "It was a cap gun. It should be in the suitcase. I don't know where it's at. I must have dropped it." Also, FBI agent Paul Hinsel testified that defendant stated on questioning that he had a cap pistol with him which he intended to use to scare anyone who tried to stop him in the commission of the robbery. No one testified that they actually saw a gun during the robbery nor was a gun recovered from defendant at the time of the arrest or thereafter.
La.R.S. 14:64 provides that an armed robbery is the theft of anything of value from the person of another or which he is in the immediate control of another, by use of force or intimidation, "while armed with a dangerous weapon." La.R.S. 14:2(3) defines "dangerous weapon" to include "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." This court has noted that by making robbery with a dangerous weapon an aggravated offense with severe penalties the apparent intent of the armed robbery statute is to deter the possibility of serious physical harm resulting to anyone present in such a highly charged atmosphere as the scene of a robbery in progress by the use of any substance or instrument likely to produce death or serious bodily harm. State v. Leak, 306 So.2d 737 (La. 1975); State v. Levi, 259 La. 591, 250 So.2d 751 (1971).
In a case factually similar to the instant case, State v. Elam, 312 So.2d 318 (La.1975), the victim of a robbery was threatened with being shot if he failed to comply with the robber's demands. Also, the perpetrator kept one hand inside his jacket pocket and motioned with his hand in a manner that indicated he had a weapon in the pocket. Neither the victim nor anyone else who viewed defendant at the time of the offense saw a gun or other weapon. Nor was a weapon recovered from defendant at the time of his arrest. We held in Elam that the "mere facts that no weapon was actually seen by the victim or any other witness and that no gun was recovered by the law enforcement officers who arrested the defendants after pursuing them for approximately four hundred yards does not preclude the defendants' convictions for armed robbery, considering the victim's testimony relating Wiggins' [perpetrator's] actions and his threats." In our view, to hold otherwise in a situation such as this would create a "hidden gun" defense in a prosecution for armed robbery. Also, while not determinative of the issue, the subjective reaction of the victim may be some evidence of whether there was actual likelihood of danger. State v. Bonier, 367 So.2d 824 (La.1979).
In the instant case, defendant set forth in a note handed to the victim that she would be shot if she did not comply with his demands. After reading the threatening note and observing that he kept his hands down and put one of them in his pocket, she was convinced that he had a gun. Understandably, *653 she was frightened and thought that he would shoot her. Also, the pictures depicting a bulge in his right-hand coat pocket suggested the presence of a weapon. Moreover, defendant had ample opportunity between the commission of the robbery and his arrest in which to dispose of the weapon. Accordingly, whether applying the traditional "no evidence" standard of review or the one set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that is, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt, we conclude that there was ample evidence to support the jury's conclusion that defendant was "armed with a dangerous weapon" at the time of the robbery.
Assignment of Error No. 12 is without merit.

ASSIGNMENT OF ERROR NO. 13
Defendant contends the trial judge erred in allowing the prosecutor to display a gun which had not been introduced at trial during his closing argument.[10] He argues that the demonstration was beyond the scope of closing argument.
During closing argument, the district attorney displayed to the jury a photograph taken by the camera surveillance system at the bank during a robbery. The photograph depicted defendant standing in front of the teller's window. There was a noticeable bulge in defendant's raincoat pocket and there was testimony at trial that the bulge could have been a gun. No gun was introduced in evidence. The district attorney argued that the bulge was in fact a gun, and in support of this argument, produced a gun, placed it in the pocket of the raincoat seized from defendant, and urged the jury to compare the bulge in the photograph with the protrusion produced by the gun. No attempt was made to connect the gun used in the demonstration with defendant or to claim that the gun was the one used in the robbery. Defendant admitted in brief that no objection was made by defendant.
The then applicable La.Code Crim.P. art. 841 required an objection at the time of the occurrence of an alleged irregularity or error and reservation of a bill of exceptions in order to be availed of after verdict. Since no objection was made or a bill of exceptions reserved to the alleged irregularity in this instance, nothing is presented for our review.
We wish to observe that in a somewhat similar situation in State v. Davis, 336 So.2d 805 (La.1976), while not finding reversible error, we noted that the "practice here followed is discouraged, because of its inherent possibility of prejudice and in order to assure that an accused is convicted only on the basis of legally admissible evidence." However, this case was tried some five years before the warning expressed in Davis.
Assignment of Error No. 13 is without merit.

ASSIGNMENT OF ERROR NO. 14
Defendant contends his constitutional right of judicial review based upon a complete record of all evidence upon which the judgment is based (La.Const. art. 1, § 19) has been violated by the destruction of part of the physical evidence introduced at trial.
The record reveals that after trial, the physical evidence introduced was delivered to the United States District Court pursuant to a subpoena duces tecum for use in connection with the trial of a federal charge against defendant arising out of the instant armed robbery. Following that trial, the film showing the commission of the crime (S-12 through S-15), the raincoat (S-3), and four of the six photographs (S-4 through S-9) were either lost or destroyed by the federal authorities.
We find that defendant suffered no prejudice as a result of the destruction of this evidence. The only issue on appeal with relation to the film was the trial judge's *654 allowing in evidence the six photographs from the film sequence and not the actual content of the film itself. Also, the only question related to the raincoat is whether it was constitutionally seized at the time of the arrest. Further, we find no prejudice to defendant's right of appellate review resulting from the absence of four of the six photographs introduced in evidence at trial. Moreover, the length of the delay between trial of this matter and appellate review (some ten years) may well have contributed to the loss or destruction of the evidence. In this connection, defendant's original appeal in 1970 was dismissed because of his escape and was not reurged by him until 1979, at which time an out-of-time appeal was granted.
Assignment of Error No. 14 is without merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
DIXON, C. J., dissents with reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
There can be drawn from this record only the possibility that defendant was armed with a gun.

ON REHEARING
CALOGERO, Justice.
In this case on original hearing we affirm defendant Jay Gould's conviction of armed robbery and sentence to forty years at hard labor in the state penitentiary.[1]
We granted a rehearing primarily to reconsider the merit of defendant's assignment of error No. 12, complaining that the district court erred in not granting a motion for directed verdict premised on defendant's allegation that the jury received insufficient evidence under the applicable Jackson v. Virginia[2] standard to prove that in perpetrating the robbery of the bank defendant was armed with a dangerous weapon.
The entirety of the evidence in the record that defendant was armed with a dangerous weapon was the following:
Defendant, wearing a yellow rain slicker, entered the Bank of Louisiana in New Orleans on March 17, 1970. He proceeded to the window of a teller, one Della Dunn, without at any time exhibiting a weapon. He presented a note to the teller (quoted at length in the original opinion) which among other things stated "[b]e calm and relaxed and you won't get shot." Mrs. Dunn surrendered the money. At no time did defendant exhibit a weapon or place his hand in his pocket or make any motion with hand in pocket except that after leaving the teller's window he did place his hand in his pocket as he departed (the latter according to Mrs. Dunn). A number of witnesses with opportunity to observe defendant, including the bank manager who later gave chase and Mr. Joe Joseph who was in the teller's line just behind defendant, all testified that they did not see or suspect that defendant was armed with any kind of weapon, did not observe him place a hand in his pocket, or even so much as observe a bulge in his pocket or other clothing. A hidden bank camera[3] photographed the defendant during the robbery.
*655 The photos of defendant in the bank, taken at a distance, seem to suggest that something may have been in defendant's right coat pocket. It cannot be properly described as a bulge, but rather perhaps as a weight within the pocket causing the coat to dip on the right side.
Defendant made good his escape or departure from the bank without incident, but was captured shortly thereafter several miles away in a grocery in the Vieux Carre. When captured defendant was unarmed. The only contrary evidence concerning whether defendant was armed with anything was the testimony of a police officer who apprehended defendant, that at the time of his capture, defendant said that he had carried only a toy pistol with him which could be found in his brief case. When the officers examined the brief case it did not contain a toy pistol or any other weapon.
The state of course had the burden of proving beyond a reasonable doubt that the defendant was armed with a dangerous weapon. The only statutory definition of dangerous weapon appears in the criminal code at R.S. 14:2, under definitions, at Section 3: "[d]angerous weapon includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm."
A loaded pistol is undoubtedly a dangerous weapon irrespective of how used or exhibited. The R.S. 14:2(3) definition of dangerous weapon does not purport by its language to be exclusive. Rather, R.S. 14:2(3) merely states that the term dangerous weapon "... includes any gas, liquid, or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." A person robbing with a loaded pistol anywhere on his person, irrespective of whether used in a manner calculated or likely to produce death or great bodily harm, would surely qualify as one armed with a dangerous weapon. Other instrumentalities, not inherently dangerous, are dangerous weapons only, as defined, when in the manner used they are calculated or likely to produce death or great bodily harm.
Troubling cases have arisen where a defendant is not clearly shown to have been armed with an inherently dangerous weapon and others where a defendant is shown to have been armed with an instrumentality not inherently dangerous but used in a manner likely to produce death or great bodily harm.
A review of the jurisprudence reveals that even an inherently harmless object can be classified as a dangerous weapon when used to replicate such a weapon because such a use is likely to produce death or great bodily harm. The rationale behind this holding was expressed in the case of State v. Johnston, 207 La. 161, 20 So.2d 741 (La.1944):
"Usually in a situation of that kind the person so assaulted attempts to escape, to wrest the gun from the assailant, or to deliver to him some death dealing blow; and, in making any of these attempts, serious injury often results. Moreover, under the circumstances that existed here, as the trial judge correctly points out, `the complainants, in order to repel their assailant, would have been justified if they had either inflicted great bodily harm upon him or slain him, because it was reasonable for them to believe that their lives were placed in danger by the conduct of the defendant.'"
The jurisprudence has also held that for defendant to have been found so armed he must have employed in the robbery some instrumentality of inanimate object. The mere use of defendant's hand or finger in a manner to feign the presence of a gun when that alone is what is found to have occurred will not qualify as proof of the existence of a dangerous weapon, regardless of the havoc created. State v. Elam, 312 So.2d 318 (La.1975); State v. Calvin, 209 La. 257, 24 So.2d 467 (1949). On the other hand, we have held in State v. Elam, supra, that no weapon need ever be seen by the victim, or witnesses, or recovered by police for the trier of fact to be justified in finding that in fact defendant was armed *656 with a dangerous weapon. The inanimate objects held to be dangerous weapons by the manner of their use include an unloaded pistol, State v. Johnston, 207 La. 161, 20 So.2d 741 (1945); an unloaded and unworkable pistol, State v. Levi, 259 La. 591, 250 So.2d 751 (La.1971); a bottle in the defendant's pocket, State v. McMorris, 343 So.2d 1011 (La.1977); and a ratchet wrench coupled with a socket to resemble the shape of a pistol, State v. Leak, 306 So.2d 737 (La. 1975). See also 32 La.Law Rev. 158 (1971).
The case at hand is perhaps even more difficult than some of those cited. If unarmed, defendant did not perpetrate an armed robbery. If armed with an instrumentality not inherently dangerous, he would not have qualified as having been armed with a dangerous weapon for he did not use the object in a manner likely to produce death or great bodily harm. Only if armed with an inherently dangerous weapon, whether displayed or not, would this defendant have been shown to be guilty of armed robbery. The question therefore in this case is, did defendant have a pistol in his pocket (i. e. an inherently dangerous weapon) as opposed to a toy pistol or some other non-inherently dangerous instrumentality.
The jury apparently concluded beyond a reasonable doubt that defendant did have on his person (perhaps in his coat pocket) an inherently dangerous object (a real pistol). And of course our appellate review on that finding is limited.
Each of the cases mentioned hereinabove and, in fact, all cases reviewing findings of dangerous weapons by this Court have taken place when the evidentiary standard was whether there was "some evidence", however slight, to support the finding of the trier of fact, which standard was applicable prior to Jackson v. Virginia, supra. See State v. Davis, 371 So.2d 788 (La.1979); State v. Lecompte, 371 So.2d 239 (La.1978).
By that standard we would probably conclude that the note implying that defendant would shoot the teller if she lost her composure, coupled with photographic proof that something was probably in defendant's pocket, constituted "some evidence" that defendant was armed with a real pistol.
This is the first occasion this Court has had to review with particularity a question regarding the sufficiency of evidence to support a finding of the existence of a dangerous weapon under the Jackson v. Virginia standard. That standard, as applied in this case is whether any rational trier of fact could conclude beyond a reasonable doubt that defendant had a pistol on his person at the time of the robbery.
The definition of "reasonable doubt" was discussed in a fairly old case, State v. Jefferson, 43 La.Ann. 995, 10 So. 199 (La.1891), which expressly approved the following jury charge describing, or defining, reasonable doubt:
"It is incumbent on the state to prove the offense charged or legally included in the indictment to your satisfaction, beyond a reasonable doubt; and, before you can convict the accused, you must be satisfied from the evidence that he is guilty beyond a reasonable doubt. A reasonable doubt, gentlemen, is not a mere possible doubt; it should be an actual or substantial doubt. It is such a doubt as a reasonable man would seriously entertain. It is a serious, sensible doubt, such as you could give a good reason for. It is not sufficient you should believe his guilt only probable. In fact, no degree of probability merely will authorize a conviction; but the evidence must be of such a character and tendency as to produce a moral certainty of the prisoner's guilt to the exclusion of reasonable doubt."
In this case, all of what evidence exists is circumstantial; there is no direct evidence. To convict, circumstantial evidence must exclude every reasonable hypothesis of innocence, assuming every fact to be proved that the evidence tends to prove. R.S. 15:438. State v. Elzie, 343 So.2d 712 (La.1977); State v. Soukup, 275 So.2d 179 (La.1973). And of course there was other evidence suggesting, to the contrary, that defendant was not armed with a dangerous weapon: the policeman said defendant at the time of arrest claimed to *657 have used a toy pistol, an inculpatory admission which the state introduced into evidence, and there was no witness testimony that defendant displayed or used any instrumentality much less an inherently dangerous one such as a pistol.
Under all of these circumstances we conclude that no rational trier of fact, presented no more than this circumstantial evidence which failed to rule out all other reasonable hypotheses of innocence, could have found beyond a reasonable doubt that in robbing the Bank of Louisiana defendant Gould was armed with a pistol.
In our original opinion, we observed that to hold other than we did at that time we would create a "hidden gun" defense in a prosecution for armed robbery, prompting robbers to avoid being charged with the armed offense merely by keeping their weapons concealed. While such an observation is a slight oversimplification (a robber who uses a dangerous weapon such as a pistol, hidden or not, has committed armed robbery), it does point up a proof problem. However, such a problem is one which the state faces in each and every case, burdened as the state is with the constitutional requirement of proving a defendant guilty beyond a reasonable doubt. Furthermore, the alternative would produce a situation where an unarmed robber who bullies a victim with empty threats of shooting could be convicted of armed robbery, allowing the robber no incentive to leave his pistol at home.
Particularly should we conscientiously apply these constitutionally mandated standards of appellate review where the penalty provision for armed robbery is a five year minimum and a ninety-nine year maximum prison term, without benefit of probation, parole or suspension of sentence.[4]
In this case, the evidentiary insufficiency related only to proof that defendant in robbing the Bank of Louisiana was armed with a dangerous weapon. The evidence more than sufficed to prove him guilty of simple robbery, which according to R.S. 14:65 is "... the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon."
Accordingly, we are here faced with a situation identical to that of State v. Byrd, 385 So.2d 248 (La.1980), from which case we quote as applicable to the instant appeal:
"When the evidence does not support a conviction of the crime charged, the Court has generally remanded with instructions to discharge the defendant. See State v. Allien, 366 So.2d 1308 (La. 1978). However, the discharge of the defendant is neither necessary or proper when the evidence does support a conviction on a lesser and included offense which was a legislatively authorized responsive verdict. See State v. Tillman, 356 So.2d 1376, n.2 at 1379 (La.1978).
"In this case all of the elements of the crime of attempted simple robbery necessarily have been proved beyond a reasonable doubt to the satisfaction of the trier of fact. The verdict of guilty of the greater offense explicitly reflects the finding that defendant attempted to commit the theft of something of value which was in within (sic) the immediate control of the victim. See R.S. 14:64, 65, and 67.
"Since all the elements of the lesser and included offense of attempted simple robbery have been proved beyond a reasonable doubt, this Court should not strike down all of those adequately supported findings merely because the evidence did not reasonably support the conclusion that an additional element also existed.
* * * * * *
"Accordingly, the conviction of armed robbery and the sentence are set aside, and the matter is remanded to the trial court with instructions to enter a judgment of guilty of attempted simple robbery and to sentence the defendant accordingly..."

*658 Decree

For the reasons stated above, upon rehearing we recall our original opinion and reverse defendant Jay Gould's conviction of armed robbery and sentence of forty years, but affirm as to a conviction of simple robbery. We remand defendant to the district court with instructions to enter a judgment of guilty of simple robbery and to impose sentence accordingly.
REVERSED AND REMANDED.
BLANCHE, J., dissents.
MARCUS, J., dissents and assigns reasons.
WATSON, J., dissents for reasons assigned by MARCUS, J.
MARCUS, Justice (dissenting).
I dissent, adhering to the views expressed in the original opinion. After reviewing the evidence in the light most favorable to the prosecution, I consider that any rational trier of fact could have found that defendant was armed with a dangerous weapon, an essential element of the crime charged, beyond a reasonable doubt. I further consider that the majority opinion will create a "hidden gun" defense in a prosecution for armed robbery. Accordingly, I respectfully dissent.
NOTES
[1] In defendant's brief to this court, it is stated that after defendant's escape he was "apprehended and incarcerated in a Federal prison from 1970 to 1979. This term was served in connection with a plea bargain under Federal law for the robbery out of which this state prosecution also arose. Following the granting of his federal parole, in December, 1979, he was transferred and re-incarcerated in Orleans Parish Prison."
[2] Defendant has neither briefed nor argued Assignments of Error Nos. 1, 2, 4 and 5. Hence, we consider them to be abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975).
[3] We have numbered the assigned errors as designated in the Assignment of Errors filed in the record, not as numbered in brief to this court.
[4] In determining whether the ruling on defendant's motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the trial of the case. State v. Schmidt, 359 So.2d 133 (La.1978); State v. Stewart, 357 So.2d 1111 (La.1978); State v. Shivers, 346 So.2d 657 (La.1977); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971).
[5] Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and United States v. Johnson, 588 F.2d 147 (5th Cir. 1979), relied upon by defendant are distinguishable from the instant case in that the searches there involved automobiles (Sanders and Chadwick) and an airplane (Johnson) and that, at the time of the searches, the luggage searched was not within the immediate control of the defendants.
[6] La.Code Crim.P. art. 841 was amended by Act 297 of 1974, making a bill of exceptions to rulings or orders unnecessary. However, where trials took place prior to the effective date of the 1974 amendment, defendants were required to comply with the former law requiring objections to alleged irregularities or errors at the time of occurrence and reservations of bills of exceptions in order to be considered on appeal. See State v. Calloway, 324 So.2d 801 (La.1976); State v. Shillow, 310 So.2d 103 (La. 1975).
[7] In Farretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), decided some five years after the trial of this matter, the United States Supreme Court established that, when a defendant asserts this right of self-representation, a trial judge must make two independent decisions: Whether defendant's waiver of his right to be represented by counsel is intelligently and voluntarily made, and whether his assertion of his right to represent himself is clear and unequivocal.
[8] In a prayer for oyer, defendant specifically requested copies of all pictures of whatever kind of the scene made by or for the New Orleans Police Department. The state responded that defendant was not entitled to this information. After a hearing, the trial judge ruled the state's answers to be good and sufficient. This ruling was correct under the law at that time; however, defendant would now be entitled to the film under La.Code Crim.P. art. 718, as enacted by Acts 1977, No. 515, § 1.
[9] At the close of the state's evidence, defendant moved for a directed verdict of not guilty on the same ground. The trial judge properly denied the motion as, at the time of the trial in 1970, La.Code Crim.P. art. 778 had been declared unconstitutional by this court insofar as it permitted the judge in a jury trial to direct a verdict of not guilty. See State v. Hudson, 253 La. 992, 221 So.2d 484 (1969). Defendant also filed a motion for a new trial alleging the same issue. The motion was denied; defendant objected and properly reserved a bill of exceptions. In this assignment of error, defendant alleges only that the trial judge erred in denying the motion for a directed verdict of not guilty. We construe this contention as a claim that the trial judge improperly denied his motion for a new trial on the ground that there was no evidence that defendant was armed with a dangerous weapon, an essential element of the crime of armed robbery, in order that the issue may be properly before us for review. The state concedes in brief to this court that under these circumstances the issue is properly before us on appeal.
[10] The record does not contain a transcript of the state's closing argument. However, defendant in brief to this court quotes the pertinent portion of the state's closing argument.
[1] This was a 1970 conviction to which the trial judge granted an out of time appeal in 1979 following defendant's return to the custody of state authorities. Defendant for this identical robbery of the Bank of Louisiana, on March 17, 1970 pled guilty in the United States District Court, Eastern District of Louisiana, to the crime of bank robbery (under a sub-part of the federal statute relative to unarmed robbery, defendant alleges in brief). He served nine years in the federal prison at Atlanta, was released and is on federal parole until sometime in the 1990's.
[2] That case is reported at 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[3] Film of 840 frames and six black and white photos of selected film frames were apparently entered into evidence, of which only two black and white photographs were available for our reviewthe remainder was apparently misplaced by the federal authorities, who used them to prosecute defendant on the federal bank robbery charge.
[4] This penalty was in effect for armed robberies committed in 1970, just as it is applicable to those committed at the present time. Louisiana Acts 1966, Ex. Sess., No. 5, § 1.