**Milton REED**

v.

**Hilton BUTLER.**

**Civ. A. No. 87–3215.**

United States District Court,
E.D. Louisiana.

April 6, 1988.

Milton Reed, pro se.

William Marshall, Asst. Dist. Atty., New Orleans, La, for defendant—State of Louisiana.

ORDER AND REASONS

ROBERT F. COLLINS, District Judge.

This matter was referred to a United States Magistrate for the purpose of con-

ducting hearings, including an evidentiary hearing if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, the Rules governing 28 U.S.C. § 2254 cases.

Upon review of the entire record, the Court determines that the record is sufficient for the purpose of adjudication of petitioner's application, that an evidentiary hearing is not necessary, and that the application should be granted for the following reasons.

Accordingly, the Order of Reference to the Magistrate is hereby REVOKED.

Petitioner, Milton Reed, and two accomplices were convicted in a Louisiana State court of armed robbery. Reed was sentenced to a term of imprisonment of thirty years without the benefit of pardon, probation or parole. He claims his conviction is based upon an *ex post facto* application of the law and that the evidence was insufficient to prove an essential element of the crime of armed robbery; namely, that he was armed with a "dangerous weapon." La.Rev.Stat.Ann. § 14:64A (West 1986).

## I. BACKGROUND

On July 12, 1977, Kenneth Oliver, employed by a cigarette vending machine company, was robbed by three individuals at about 2:00 p.m. The robbery occurred after Oliver had placed some cigarette cartons inside of his truck. While looking out of the back window of the truck, he saw three individuals pass by. He continued to look at them to be sure that they kept moving. Oliver then described what happened: [1]

A. One of them came around with a gun and said it was a hold-up.
Q. What happened when—what happened after that?
A. Well, he told me "give me your money," and I told him I didn't have any money, that the money was in the safe in the trunk locked up: I never had a key for it. He says "well, give me

your money." I told him I didn't have any money on me. That's when two of the guys walked around the other side of me and started going through my pockets, and took my watch and my wallet, and my keys and forty dollars that I had in my pocket.

.    .    .    .    .

Q. Now, Mr. Oliver, do you recall which one of these three individuals had the gun? (Oliver identified petitioner, Reed.)

.    .    .    .    .

Q. Did you get a look at the gun?
A. (Witness nods in affirmative manner.)
Q. What type of gun did it appear to be?
A. A small caliber, .22, something like that.
BY THE COURT:
How did you feel?
A. Right, yes. You know, they told me "give me the money," and I figured if I didn't give them the money they were going to shoot me or something.

.    .    .    .    .

Q. (Mr. Noriea, the prosecutor) Your Honor, at this time I'd like to offer, file and introduce into evidence what's been previously marked for identification as S–1, the gun.

.    .    .    .    .

Q. I'm going to show you what's been marked as S–1. Do you recognize that?
A. Yes.
Q. What do you recognize it as?
A. The gun that they used.

At the time the offer was made of the gun (S–1), defense counsel made the following objection:

Your Honor, I object to S–1 on the ground that it has not been positively identified by Mr. Oliver as being the weapon that was used. It could fit the description of any number of *cap pistols*. They're all the same. (Emphasis added.)

---

**1.** Oliver was being questioned by the prosecuting attorney on direct examination.

The weapon which the victim identified as the one used during the course of the robbery (which he originally described as a small .22 caliber weapon), was in fact a toy pistol. A codefendant, Robert Desdunes, Jr., testified that the police entered an apartment in New Orleans where he and another man, named James Mathias, were listening to music. The following exchange occurred between Desdunes and defense counsel:

Q. Do you know how this gun came about, how the police got the gun?

A. Yes, sir.

Q. How did they get it?

A. James Mathias ... asked the police, he said, "is this what you all looking for," and he held it out. I remember the gun. They had globs of paint on it. They didn't have no round thing around the trigger. They had a little piece of string hanging around it. The police said, "this is what it is." But before, when the man came, they said they were looking for a .22 caliber pistol.

Desdunes believed the toy pistol belonged to Mathias' younger brother. Indeed, Mathias testified to that fact.

## II. THE "DANGEROUS WEAPON" ELEMENT OF ARMED ROBBERY

At the time of the commission of the crime in the instant case, armed robbery was defined as follows:

A. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, *while armed with a dangerous weapon.* (Emphasis added.)

La.Rev.Stat.Ann. 14:64(A) (West 1986). At the time the crime in question was perpetrated, a "dangerous weapon" "include[d] any gas, liquid, or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." La.Rev.Stat.Ann. 14:2(3) (West 1986).

In 1983, the Louisiana legislature re-enacted and renamed the crime of armed robbery. It eliminated the crime of "armed robbery" and created a new crime of "first degree robbery."[2] Under the law as it existed when Reed was convicted, the perpetrator must have been *actually* armed with a dangerous weapon. Under the redefined and re-enacted law, it is sufficient for the victim to *"reasonably believe"* that the offender is armed with a dangerous weapon, whether or not such is the case. This change was suggested by the Louisiana Supreme Court which had been grappling with the meaning of the term "dangerous weapon" under the prior statute. *See, e.g., State v. Green,* 409 So. 2d 563 (La.1982) (use of a cap pistol to hold up a savings and loan association); *State v. Byrd,* 385 So.2d 248 (La.1980) (use of a toy pistol in attempted robbery); *State v. Thomas,* 439 So.2d 629 (La.App. 1st Cir. 1983), *writ granted, rev. in part on other grounds,* 452 So.2d 1177 (threat to kill with butt of unloaded gun); *State v. Levi,* 259 La. 591, 250 So.2d 751 (La.1971) (pointing unloaded, unworkable pistol at victim); *State v. Gould,* 395 So.2d 647 (La.1980) (robbery of bank with toy pistol).

In each of the above cases, the core question was whether a toy pistol, an unloaded or unworkable pistol, was a "dangerous weapon." In those cases, the courts focused on the *manner* in which the defendant used the object and the *effect* such use had on the victim and bystanders. For example, in *State v. Green,* the Louisiana Supreme Court held, "[t]he use of an inherently harmless object in a manner that creates circumstances likely to produce death or great bodily harm results in the *inherently harmless object* being a dangerous weapon within the provisions of

---

**2.** See Louisiana Act Number 533, § 1 of 1983. (La.Rev.Stat.Ann. 14:64.1(A) (West Supp.1986) now provides, in pertinent part:

First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation,

*when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.* (Emphasis added.)

The emphasized phrase replaces *"while armed with a dangerous weapon"* in the armed robbery statute under which Reed was convicted in 1977.

LSA–R.S. 14:2(3) and 14:64." *Green*, 409 So.2d at 565. (Emphasis in the original.)

In each of the above convictions, (except *Byrd*, 385 So.2d 248 (La.1980), and *Gould*, 395 So.2d 647 (La.1980)), the Court determined that the victim reasonably believed the use of the toy pistol or the unloaded firearm would likely cause great bodily harm. As stated by the Louisiana Supreme Court in *Byrd*, "[n]umerous cases have developed the theory that the victim's potential reaction to an instrumentality not inherently dangerous can be considered by the jury in determining whether the instrumentality 'in the manner used' is likely to produce great bodily harm and is therefore a 'dangerous weapon.'" *Byrd*, 385 So.2d at 250. The focus was whether "defendant's use of the toy pistol created a life endangering situation." *Id.*

For the first time in such cases, the conviction in *Byrd* for the crime of attempted armed robbery was set aside by the Supreme Court because the evidence indicated the victim's *subjective* reaction revealed "he did not perceive any likelihood of great bodily harm." 385 So.2d at 250. The Supreme Court in *Byrd* observed:

> This is not to say that a toy pistol can under no circumstances be used as to create a life endangering situation which supports a guilty verdict of armed robbery. But under the facts and circumstances of this case a reasonable trier of fact, viewing the evidence in the light most favorable to the prosecution, simply cannot conclude that all elements of the offense of armed robbery have been proved beyond a reasonable doubt. (Citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

*Byrd*, 385 So.2d at 250.

The Supreme Court further reasoned in *Byrd* that the distinction between the relatively smaller penalty for simple robbery (maximum of five years at the time of the crime in the instant case) compared with the minimum sentence of five years at hard labor without the benefit of parole, probation or suspension of sentence up to a maximum of ninety-nine years illustrates "the more severe penalty is intended to deter the use of truly dangerous instrumentalities." 385 So.2d at 250. As a result of the inherent problems in defining a "dangerous weapon," the *Byrd* court stated:

> perhaps the legislature will clarify the situation. There is a presently pending bill which defines armed robbery to include the situation in which the victim is reasonably led to believe the robber is armed with a dangerous weapon. But until such clarification the doubt should be resolved in favor of lenity.

*Byrd*, 385 So.2d at 250, n. 3. The Louisiana legislature reacted to the suggestion of the *Byrd* court and enacted the first degree robbery statute discussed at page 567, *supra*.

In *State v. Gould*, 395 So.2d 647, the defendant was found guilty of armed robbery and sentenced to forty years at hard labor. In that case, the defendant placed a note on the counter of a window at a bank, which stated:

> *DON'T TALK! ACT NATURAL!* PUT *ALL* THE BUNDLED MONEY IN THE SACK FIRST. NOW PUT THE REST OF THE MONEY IN. BE *CALM* & RELAXED AND YOU *"WON'T GET SHOT!"* DON'T LET ANYONE FOLLOW ME. (Emphasis in original.)

*Gould*, 395 So.2d at 652. The bank teller testified she was very frightened, thought the defendant had a gun, and believed that Gould would shoot her. Upon Gould's arrest, it was found he used a "cap gun in the commission of the robbery." 395 So.2d at 652. *Id.* Gould testified that he kept the pistol with him because he intended to scare anyone who attempted to stop him in the commission of the robbery. There was no evidence offered by the state to indicate that anyone actually saw the gun used during the robbery, and no pistol was recovered from Gould at the time of his arrest or thereafter. On direct appeal, the Louisiana Supreme Court rejected Gould's argument that he was not armed with a dangerous weapon, an essential element of the crime of armed robbery. 395 So.2d 647–653. However, on rehearing, Justice Callegero observed that the Court was

faced "with a situation identical to that of *State v. Byrd*, 385 So.2d 248 (La.1980)." *Gould*, 395 So.2d at 657.

In *Byrd*, the Court set aside the conviction of the defendant for the crime of attempted armed robbery by applying the test laid down in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), namely that in using a toy pistol to commit a robbery, "a reasonable trier of fact, viewing the evidence in the light most favorable to the prosecution, simply could not conclude that all elements of the offense of armed robbery had been proved beyond a reasonable doubt." *Byrd*, 385 So.2d at 250. In *Gould*, Justice Callegero stated:

> [t]he case at hand is perhaps even more difficult than some of those cited. If unarmed, defendant did not perpetrate an armed robbery. If armed with an instrumentality not inherently dangerous, he would not have qualified as having been armed with a dangerous weapon for he did not use the object in a manner likely to produce death or great bodily harm. *Only if armed with an inherently dangerous weapon, whether displayed or not, would this defendant have been shown to be guilty of armed robbery. The question therefore in this case is, did defendant have a pistol in his pocket (i.e. an inherently dangerous weapon) as opposed to a toy pistol or some other non-inherently dangerous instrumentality.* (Emphasis added.)

395 So.2d at 656. Justice Callegero further observed in the cases mentioned (which included *State v. Johnston*, 207 La. 161, 20 So.2d 741 (1944), and *State v. Levi, supra* ), the findings of dangerous-weapon-use was based upon the evidentiary standard of "*some evidence*," however slight, to support the finding of the trier of fact. This standard was applicable at the time Reed in the instant case was convicted of armed robbery.

However, because of the Supreme Court's mandate in *Jackson v. Virginia*, the "some evidence" standard no longer passes constitutional muster in a federal habeas corpus application where the suffi-

ciency of evidence to obtain conviction is questioned. Justice Callegero noted:

> [t]his is the first occasion this Court has had to review with particularity a question regarding the sufficiency of evidence to support a finding of the existence of a dangerous weapon under the *Jackson v. Virginia* standard. That standard as applied in this case is whether *any rational trier of fact could conclude beyond a reasonable doubt* that defendant had a pistol on his person at the time of the robbery. (Emphasis in the original.)

*Gould*, 395 So.2d at 656.

Applying the *Jackson* standard to the facts in *Gould*, the Louisiana Supreme Court also concluded:

> [u]nder all of these circumstances we conclude that no rational trier of fact, presented no more than this circumstantial evidence which failed to rule out all other reasonable hypotheses of innocence, could have found beyond a reasonable doubt that in robbing the Bank of Louisiana defendant Gould was armed with a pistol.

*Gould*, 395 So.2d at 657.

### III. SUFFICIENCY OF THE EVIDENCE

■■■ Applying the *Jackson v. Virginia* standard to determine the sufficiency of the evidence to convict Reed of armed robbery as defined in 1977, the Court is satisfied that the state did not prove Reed guilty "beyond a reasonable doubt of every fact necessary to constitute the crime with which he [was] charged." *In Re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). The Due Process Clause prohibits the conviction of an accused except upon proof of every essential element of a crime beyond a reasonable doubt. *In Re Winship*, 397 U.S. at 364, 90 S.Ct. at 1073, 25 L.Ed.2d 368. In the instant case, the state failed to prove beyond a reasonable doubt Reed committed the robbery "while armed with a dangerous weapon" as defined by La.Rev.Stat.Ann. 14:64(A) (West 1986). The Court is therefore satisfied that any rational trier of fact could not have found Reed committed the robbery while armed with a "dangerous

weapon." In this situation, the toy pistol used by Reed and his accomplices did not constitute a "dangerous weapon" under Louisiana law in 1977. It is clear that Reed's conviction denied him of his constitutional right to due process of law and compels the issuance of a writ of habeas corpus.

## IV. JACKSON V. VIRGINIA APPLIES RETROACTIVELY

■ Because Reed was tried and convicted approximately two years before *Jackson* was decided, the question remains whether the sufficiency of evidence standard enunciated in *Jackson* in 1979 applies retroactively to the conviction of Reed in 1977. The Fifth Circuit answered this question in the affirmative in *Holloway v. McElroy*, 632 F.2d 605, 639 (5th Cir.1980), as follows:

"We thus think it absolutely clear that this court and the federal district courts are bound to apply the *Jackson* standard in reviewing under 28 U.S.C. § 2224 the sufficiency of the evidence supporting state-court convictions—regardless of whether that state-court conviction was obtained *before* or *after* the date of the *Jackson* decision. We so hold." (Emphasis added.)

## V. ABUSE OF WRIT

Court records indicate that in June of 1979, Reed filed a prior federal habeas corpus application for relief in this Court. *See Milton Reed, Jr. v. Frank Blackburn*, Civil Action 79–2082 "C" (3). In that application, Reed sought habeas relief on grounds not contained in his instant application, namely that the trial court erred in admitting hearsay testimony; that he was subjected to an unnecessarily suggestive identification procedure; and there was no probable cause for his arrest, search and seizure. This petition was dismissed and affirmed on appeal by the United States Fifth Circuit Court of Appeals.

■ Although the state did not raise the question of *abuse of writ*, the Court may raise it *sua sponte, McGee v. Estelle*, 722 F.2d 1206 (5th Cir.1984). It must therefore be determined whether or not Reed's failure to include the instant claims in his prior application constitutes a successive writ application and an abuse of the writ of habeas corpus under Rule 9(b) of the Rules Governing Applications for § 2254 Relief.

In the Fifth Circuit's latest pronouncements on abuse of writ, *Passman v. Blackburn*, 797 F.2d 1335 (5th Cir.1986), the Court held an objective standard must be applied in determining if a petitioner had knowledge of prior claims or legal issues which were deliberately withheld from the prior applications. "A *pro se* petitioner must at the least, knowingly withhold a claim in order for the abuse of writ doctrine to apply." *Passman*, 797 F.2d at 1343 (referring to the landmark Supreme Court case of *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963)). Moreover, the withholding must be as a result of the "considered choice of the petitioner." *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963).

■ To hold Reed accountable for abuse of writ, then, he must have had actual knowledge of *Jackson* and deliberately withheld this argument in his first habeas application. It is clear beyond any reasonable doubt to this Court that Reed, a *pro se* petitioner, not schooled in the law, did not deliberately withhold the *Jackson* argument. Reed's first habeas application was filed in this Court in June of 1979. *Jackson* was not *decided* until June 28, 1979. *Jackson*, 443 U.S. at 307, 99 S.Ct. at 2781. It is practically certain that Reed was not aware of *Jackson v. Virginia*, nor its importance to his claims, when he first applied for habeas relief in June, 1979. The Court therefore concludes that Reed's explanation for not having raised *Jackson* in his first application evidences a "legal excuse" that does not bar his instant application for habeas corpus relief based upon the sufficiency-of-evidence standard established in *Jackson v. Virginia. See Charlie Jones v. Estelle*, 722 F.2d 159, 163 (5th Cir.1983) (en banc), *cert. denied*, 466 U.S. 976, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984); *Daniels v. Blackburn*, 763 F.2d 705, 707 (5th Cir.1985).

## VI. PLAINTIFF'S EX POST FACTO CLAIM

■ Reed's conviction is constitutionally invalid as a result of insufficiency of evi-

dence to convict him of armed robbery. It is therefore not necessary for the Court to analyze at length his claims that his conviction is based upon the *ex post facto* application of the law. Reed cites *Batiste v. Blackburn*, 786 F.2d 704 (5th Cir.1986), to support his claim. In *Batiste*, however, in response to the jury's request for additional instructions on the difference between simple and armed robbery, the trial court instructed the jury that, "if the victim thinks the man has a gun and surrenders his money to [the accused] then it is armed robbery." *Batiste*, 786 F.2d at 705. No such faulty jury instruction was given in the instant case. Clearly the trial judge in *Batiste* redefined the elements of the crime of armed robbery under the law as it existed before the 1983 revision. Thus, we find Reed's *ex post facto* claim to be meritless. We do nevertheless note that in *Batiste*, the court stated that in instructing the jury that armed robbery can result from the victim's mere subjective belief in the presence of a weapon, the trial judge reformulated the definition of that crime *ex post facto*. *Batiste*, 786 F.2d at 705. The court further observed:

> Under such a definition, no longer must a robber use a dangerous weapon to be considered armed; according to the trial court, he need only terrify his victim into believing that a weapon exists—regardless of the inaccuracy of the belief—to commit armed robbery.

786 F.2d at 705.

### VII. HABEAS RELIEF

In *State v. Gould*, 395 So.2d 647, and *State v. Byrd*, 385 So.2d 248, where the evidence supported convictions of a lesser crime and included offenses of armed robbery and attempted armed robbery, respectively, legislatively authorized as responsive verdicts, *State v. Tillman*, 356 So.2d 1376, n. 2 at 1379 (La.1978), the Supreme Court of Louisiana set aside the convictions and remanded with instructions for the district court to enter judgments of guilty of the lesser included offenses, and to sentence the defendants accordingly.

*Gould*, 395 So.2d at 657–658; *Byrd*, 385 So.2d at 252–253. *See* La.C.Cr.P. art. 814 subd. A (19) & (20) (West 1981).[3] In the instant case, the evidence establishes beyond a reasonable doubt that any rational trier of facts necessarily could have found Reed guilty of simple robbery, all of the elements of which were proved beyond a reasonable doubt.

Accordingly,

IT IS ORDERED, ADJUDGED AND DECREED that the application of Milton Reed for a writ of habeas corpus is hereby GRANTED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the conviction of Milton J. Reed of armed robbery and the sentence imposed upon him therefore are set aside and the case is remanded to the state court with instructions to enter a judgment of guilty of simple robbery and to sentence Milton Reed accordingly.

---

3. The Louisiana Supreme Court instructed the lower courts to enter judgments of "guilty of simple robbery as to Gould," and "guilty of attempted simple robbery" as to Byrd. *See Gould*, 395 So.2d at 658; *Byrd*, 385 So.2d at 253.